

**ORDERED in the Southern District of Florida on October 4, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                            Case No.: 18-15825-AJC

NUBIA MARCELLA PEREZ,                             Chapter 11

          Debtors.

_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON BRIAN AND ANDREA HOLLAND'S MOTION FOR SANCTIONS UNDER BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105

**THIS MATTER** came before the Court for an evidentiary hearing on September 28, 2018 upon Creditors, Brian Holland and Andrea Holland's ("*Landlord*") Motion for Sanctions under Bankruptcy Rule 9011 and 11 U.S.C. § 105 [ECF No. 25].

### INTRODUCTION

On May 30, 2018, Landlord filed a Motion for Sanctions under Bankruptcy Rule 9011 and 11 U.S.C. § 105 against Debtor Nubia Marcella Perez ("*Debtor*") and her counsel, Thomas

1

Exhibit A

Neusom ("**Neusom**")[1] alleging that Debtor and Neusom filed a bankruptcy petition in bad faith for the sole purpose of staying a state court eviction action brought by Landlord against A Plus Lamination and Finishing, Inc. At trial, the Landlord presented no evidence regarding actions taken by the Debtor, but it did present evidence that Debtor's attorney, Neusom, falsely advised Landlord's manager and Landlord's state court attorney that he had filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc., the defendant in the Florida county court eviction action. The Court, having considered the documentary evidence, witness testimony, and counsel's arguments, enters its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1.      Debtor is an individual, and a principal and (apparently) the sole owner of A Plus Lamination and Finishing, Inc. Ex. 19.[2]

2.      A Plus Lamination and Finishing, Inc. is an active Florida Corporation, which entered a one-year commercial lease ("**Lease**") with Landlord to rent property located at 5559 NW 36th Avenue Miami, Florida 33142 ("**Property**"). Ex. 21.

3.      The Lease's one-year term ran from August 1, 2017 to July 31, 2018. A Plus Lamination and Finishing, Inc. agreed to pay $8,666.67 in monthly rent plus sales tax and fees to lease the Property. *Id.*

4.      A Plus Lamination and Finishing, Inc. defaulted on the Lease by failing to make the March 1, 2018 rent payment and subsequent payments. Ex. 1.

---

[1]      Neusom's Florida Bar number is 37148.
[2]      All referenced exhibits were admitted into evidence during the evidentiary hearing.

5.      On April 13, 2018, Landlord initiated an eviction action against A Plus Lamination and Finishing, Inc. in the County Court in and for Miami-Dade County, Case No. 2018-008187-CC-05 ("***Eviction Action***").

6.      On May 10, 2018, Judge Alexander Bokor ordered A Plus Lamination and Finishing, Inc. to deposit rent into the court registry ("***Deposit Order***"). Ex. 6.

7.      The Deposit Order required A Plus Lamination and Finishing, Inc. (1) to deposit $9,000 by May 7, 2018; (2) to deposit $9,000 by May 14, 2018; and (3) to make timely deposits as additional rent became due.  Under the Deposit Order, A Plus Lamination and Finishing, Inc.'s failure to make timely deposits would constitute "an absolute waiver of its defenses, other than payment or proof of payment, and [Landlord] shall be entitled to a Default/Default Final Judgment for Removal of A Plus Lamination and Finishing, Inc. and Writ of Possession to issue forthwith without the necessity of further hearing pursuant to Section 83.232, Florida Statutes."

8.      Landlord and A Plus Lamination and Finishing, Inc. were also ordered to attend mediation on May 15, 2018 at 1:30 pm. *Id.*

9.      A Plus Lamination and Finishing, Inc. failed to deposit into the court registry the $9,000 due on May 14, 2018, resulting in a waiver of defenses and entitling Landlord to immediate default final judgment and a writ of possession.

10.      Neusom filed an Individual Chapter 11 bankruptcy petition ("***Petition***") with this Court on behalf of Nubia Perez on May 15, 2018, the day after A Plus Lamination and Finishing, Inc. failed to make the deposit required by the state court Deposit Order.  D.E. 1. Neusom executed the Petition on page eleven as counsel for Nubia Perez. *Id.*

11.      On page 2 of the Petition, Neusom alleged that Nubia Perez is a small business debtor that does business under the name "A Plus Lamination and Finishing, Inc."  This is false.

3

A Plus Lamination and Finishing, Inc., the tenant in the eviction action, is a duly registered Florida corporation. It is not a trade name or a "doing business as" name. No evidence was presented that would establish A Plus Lamination and Finishing, Inc. is registered as a fictitious name for Nubia Perez.[3]

12.      Despite the fact that A Plus Lamination and Finishing, Inc. was not in bankruptcy, and just hours before the mediation was scheduled to proceed on May 15, 2018, Neusom called Desiree Lindsay ("*Lindsay*"), Landlord's employee, and Joseph Colletti ("*Colletti*"), Landlord's Eviction Action counsel and advised them both that he filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc.

13.      Neusom left a voice message for Lindsay advising her that he filed the Petition for A Plus Lamination and Finishing, Inc. Neusom also had two phone conversations with Colletti on May 15, 2018 where Neusom advised Colletti of A Plus Lamination and Finishing, Inc.'s bankruptcy filing, and Neusom's intent to file a suggestion of bankruptcy in the Eviction Action. He also asked Colletti for the Eviction Action case number on the second phone call.

14.      Colletti having been orally advised by Attorney Neusom that A Plus Lamination and Finishing, Inc. filed a bankruptcy petition, he immediately filed a Notice of Cancellation of Mediation, stating, "Defendant has filed a petition for relief with the bankruptcy court." Ex. 8

15.      Colletti's testimony was forthcoming, straight-forward, and credible. Colletti took contemporaneous handwritten notes during his conversations with Neusom. Ex. 25.

---

[3]      Neusom filed additional pleadings in this case where he styled the bankruptcy case with Debtor's name as "Nubia Marcella Perez DBA A Plus Lamination." This Court believes that Neusom intended to give the impression that A Plus Lamination and Finishing, Inc. was in bankruptcy. *See* D.E.s 19, 38, 39 and 50.

16.     On May 15, 2018, the state court entered an Order of Bankruptcy Stay and Closing

Case. *See* Ex. 7.

17.     During the June 20, 2018, 341 meeting of creditors, Neusom and the Debtor

admitted that her bankruptcy petition was filed to stop the Eviction Action, an indicia of bad faith

under *Phoenix Piccadilly* standards, *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988):

```
4              MR. NEUSOM:  Yeah.  Well, I guess the --
5    really what happened was there was an eviction, and they
6    were in the process of almost having a writ of possession,
7    and so they did have to file.  There was also a
8    garnishment of some funds.
9              So, there was, there was an emergency
10   situation that participated the filing and required the
11   filing, and at this point we may be able to resolve these
12   issues outside of bankruptcy.  So we're going to probably
13   resolve -- dismiss the bankruptcy.
```

Ex.18.

```
6              Q.   Okay.  Ms. Perez, the question was, what was
7    the reason that you -- I understand that your company is
8    not doing well.  Why did you file for bankruptcy?
9              MR. NEUSOM:  Mention the eviction.
10             MS. ARMENGOL:  What was that?
11             MR. NEUSOM:  Can I talk to her?
12             MS. ARMENGOL:  Okay.
13             MR. NEUSOM:  You probably may want to talk
14   about the eviction and the garnishment.  I think those
15   were, like, what happened.
```

Ex. 18 at 10:6-15.

18.     On June 28, 2018, this Court dismissed this case with prejudice, granting (1) Landlord's Motion to Dismiss the Chapter 11 Bankruptcy Petition for Bad Faith and Fraud on the Court and for Relief from the Automatic Stay [D.E. 24], (2) United States Trustee's Motion to Dismiss or Convert the Case [D.E. 46], and Debtor's Motion to Dismiss Bankruptcy [D.E. 49]. D.E. 52.

19.     On July 2, 2018, with no erroneously alleged automatic stay in place, Landlord filed a Motion for Entry of Default Final Judgment in the Eviction Action, and the state court issued a Writ of Possession on July 31, 2018. Exs. 11 and 17.

20.     Although Landlord obtained a writ of possession on July 31, 2018, A Plus Lamination and Finishing, Inc. did not vacate the premises until August 22, 2018.

21.     Lindsay testified that Landlord had a tenant who wished to rent the Property on August 1, 2018, but because A Plus Lamination and Finishing, Inc. was still in the Property, the new tenant could not take possession. Landlord was forced to postpone the lease with the new tenant by one month, with the new lease commencing September 1, 2018. Ex. 24. Consequently, Landlord lost one month of rent under the new lease at $9,256.00.

22.     As a result of Debtor and Neusom's filing of the Petition and Neusom's fraudulent representations of an alleged stay of the Eviction Action, Landlord hired the law firm of Meland Russin and Budwick, P.A. ("**MRB**") to represent it in the bankruptcy case and MRB has incurred $40,768.33 in legal fees. Ex. 22.

23.     MRB's fees include, among other things, time for attending a 341 meeting of creditors; researching and drafting a Motion to Dismiss the Bankruptcy Petition for Bad Faith and Fraud on the Court; researching and drafting a Motion for Sanctions against Debtor and Neusom;

preparing for and attending a hearing on the Motion to Dismiss; preparing for and attending multiple hearings related to the Motion for Sanctions, which was continued twice at the request of Attorney Neusom; witness and exhibit preparation; numerous communications with Neusom, including settlement discussions and the preparation of an unexecuted settlement agreement. MRB also attended the three and one half hour evidentiary hearing on the Motion for Sanctions on Friday, September 28, 2018.

24.     Colletti testified that he, too, filed additional motions and attended additional hearings in the Eviction Action that would not have been necessary had Neusom not misrepresented a bankruptcy stay was in effect. Colletti advised the state court of the dismissal of this case and resumed the Eviction Action. Ex. 14. Landlord paid Colletti an additional $2,000 in attorney's fees to complete the eviction and obtain the writ of possession, which had been delayed by Neusom's false statements.

25.     Neusom argued that Colletti should have independently researched whether the Petition was properly filed in the name of A Plus Lamination and Finishing, Inc., rather than rely on Neusom's representations that A Plus Lamination and Finishing, Inc. filed bankruptcy.

26.     Landlord presented the testimony of two credible witnesses, both of whom testified that Neusom told them he filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc.

27.     Respondent rested without testifying or presenting any witnesses.

## CONCLUSIONS OF LAW

Landlord seeks sanctions against Debtor and Neusom under Bankruptcy Rule 9011 and 11 U.S.C. § 105. Bankruptcy Rule 9011 states:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed **after an inquiry reasonable under the circumstances**,

(1)    it is not being presented for any **improper purpose**, such as to harass or to **cause unnecessary delay** or **needless increase in the cost of litigation**;

(emphasis added).  A sanction under this rule should deter repetition of misconduct. Sanctions may include non-monetary directives, as well as reimbursement of attorney's fees and other expenses.

The Court finds Neusom's argument, that Colletti had a duty to investigate the validity of Neusom's lie about A Plus Lamination and Finishing, Inc. filing for bankruptcy relief, to be misguided, disingenuous, and at odds with the unambiguous language of Rule 9011.  Under Rule 9011, Neusom has the responsibility to sign and file a petition after reasonable inquiry and not for an improper purpose or to cause unnecessary delay.  By filing the Petition, Neusom certified that he conducted a reasonable inquiry, and the Petition was not being brought for an improper purpose or to cause unnecessary delay. The Court and other members of the Bar should be able to rely on the representations of other licensed attorneys.

"The purpose of the automatic stay is to give the debtor breathing room. The automatic stay is not to be used as an abusive litigation tactic." *In re Smith*, 257 B.R. 344, 351 (Bankr. N.D. Ala. 2001) ("The petition is excluded from the safe harbor provision of Rule 9011 because its filing has immediate serious consequences.").  In this case, however, the Debtor and Neusom used the Petition as an abusive litigation tactic. As the testimony at the 341 meeting reveals, and the testimonial and documentary evidence from trial indicates, Neusom filed the individual Petition on behalf of the Debtor, and included A Plus Lamination and Finishing, Inc. for the improper purpose of misleading the state court eviction counsel and the state court judge into staying the

Eviction Action. Neusom misrepresented Debtor's identity in her Petition by alleging that Nubia Perez was doing business as A Plus Lamination and Finishing, Inc., when A Plus Lamination and Finishing, Inc. is actually a registered Florida corporation.

Neusom's misrepresentation to Colletti [that A Plus Lamination and Finishing, Inc. was in bankruptcy when it was not] resulted in the cancellation of the May 15, 2018 mediation, and generated the entry of an Order implementing a non-existent automatic stay and withholding issuance of a writ of possession to which Landlord was entitled as of May 15, 2018. The timing of the filing of the Petition and the admissions at the 341 meeting indicate that Neusom filed the Nubia Perez Petition for the improper purpose of delaying the Eviction Action, which unnecessarily increased the cost of litigation. However, the evidence is not clear that Nubia Perez understood what Neusom was doing, and there was no evidence that Nubia Perez told any lie that contributed to the Landlord's counsel or the state court judge being misled. While Neusom knew or should have known that filing the Petition as a delay tactic was improper, the same cannot be said for the Debtor.

The Court has the inherent power to sanction bad faith conduct under 11 U.S.C. § 105. *In re IAMEC Funding, Inc.*, 236 B.R. 490, 491 (Bankr. M.D. Fla. 1999). The bad-faith filing of a bankruptcy petition is sanctionable under 11 U.S.C. § 105. *In re Hidalgo*, 96 B.R. 389, 390 (Bankr. S.D. Fla. 1988). Even more serious is lying to opposing counsel in an effort to mislead him, and ultimately the Court. Neusom's lies caused the Landlord to incur legal fees in the alleged amount of $40,768.33 to MRB and $2,000 to Colletti. Landlord also lost $9,256.00 in rent for the month A Plus Lamination and Finishing, Inc. held over possession of the Property. In total, Landlord claims it lost $52,024.33 because of Neusom's misconduct. The Court finds that not all the requested fees are compensable.

Based on the record and evidence admitted at the evidentiary hearing, the Court concludes that Attorney Thomas Neusom (Florida Bar number 37148) engaged in sanctionable, bad-faith conduct by (1) filing the Individual Chapter 11 Petition for the purpose of stopping the Eviction Action against a registered Florida corporation; and (2) misrepresenting Debtor's identity in the Petition to cause confusion. Neusom wrongfully obtained the benefit of the automatic stay for a non-debtor by misrepresenting to Lindsay and Colletti that A Plus Lamination and Finishing, Inc. was in bankruptcy, thereby obtaining the cancellation of the May 15, 2018 mediation and postponement of the issuance of the writ of possession.

Ironically, if Neusom had filed a bankruptcy petition on behalf of the corporation, he would have obtained a stay without having to lie. If Neusom filed a petition on behalf of A Plus Lamination and Finishing, Inc., the information he provided to Lindsay and Colletti would have been true and he would have achieved the same results that were produced in this case by lies. The Court is reminded of the old U.S. Marine Corp adage, "never attribute to malice that which can be explained by stupidity." It is therefore

**ORDERED AND ADJUDGED** that Landlord's Motion for Sanctions under Bankruptcy Rule 9011 and 11 U.S.C. § 105 is **GRANTED IN PART** as follows:

1. Neusom is liable to Landlord in the total amount of $31,256, representing $2,000 in legal fees to Colletti; $20,000 to MRB for legal fees and $9,256.00 for lost rent. If not paid within thirty (30) days, Landlord may request the entry of a final judgment for the sanctions awarded herein.

2. Neusom is ENJOINED from practicing bankruptcy in any bankruptcy court in the United States for a period of one (1) year from entry of this Order, after which Neusom may apply for readmission to bankruptcy practice upon compliance with all the Local

Rules of the Court governing admission to practice and completing a total of eighteen (18) hours of Continuing Legal Education, consisting of twelve (12) hours of Continuing Legal Education in bankruptcy law and six (6) hours of ethics.

3. The Clerk of Court is directed to forward certified copies of this Order to The Florida Bar at 651 E. Jefferson Street, Tallahassee, Florida, 32399 and to the Honorable Alexander Bokor, County Court Judge, at Dade County Courthouse. 73 West Flagler Street, Miami, FL 33130

# # #

**Copies furnished by Clerk of Court to:**

**Debtor**
**Thomas Neusom, Esq.**
**Utibe Ikpe, Esq.**

Utibe I. Ikpe, Esquire is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

1
2      IN THE BANKRUTCY COURT OF THE SOUTHERN DISTRICT OF FLORIDA
3
4    DEBTOR                                    **CASE NO: 18-15825**
5
6    NUJBIA MAR ELLA PEREZ.                    **ATTORNEY THOMAS NEUSOM'S**
                                               **REQUEST FOR STAY DURING**
7                                              **PENDENCY OF THE APPEAL**
8
9
10
11
12
13
14
15
16
17
18
19
20
      **1. COMES NOW,** Attorney Thomas Neuom requesting that the Honorable Judge A.
21   Cristol grant a stay of any further proceedings in his lower Bankruptcy Court after granting this
22   request for Stay during Pendency of the Appeal and then recusing himself from this case. Upon
     recusal a new Judge should be brought in subject to the Stay.
23
24   2.The relevant part of Bankruptcy Rule of 8007 states:
25
26
27
                                             1
28

Exhibit B

3.

# <u>Rule 8007. Stay Pending Appeal; Bonds; Suspension of Proceedings</u>

(a) Initial Motion in the Bankruptcy Court.

(1) *In General*. Ordinarily, a party must move first in the bankruptcy court for the following relief:

(A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;

(B) the approval of a supersedeas bond;

(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or

(D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

(2) *Time to File*. The motion may be made either before or after the notice of appeal is filed.

(b) Motion in the District Court, the BAP, or the Court of Appeals on Direct Appeal.

(1) *Request for Relief*. A motion for the relief specified in subdivision (a)(1)—or to vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.

(2) *Showing or Statement Required*. The motion must:

(A) show that moving first in the bankruptcy court would be impracticable; or

(B) if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.

(3) *Additional Content*. The motion must also include:

(A) the reasons for granting the relief requested and the facts relied upon;

(B) affidavits or other sworn statements supporting facts subject to dispute; and

(C) relevant parts of the record.

1    (4) *Serving Notice*. The movant must give reasonable notice of the motion to all
2  parties.

3  (e) Continuation of Proceedings in the Bankruptcy Court. Despite Rule 7062 and
4  subject to the authority of the district court, BAP, or court of appeals, the
bankruptcy court may:

5    (1) suspend or order the continuation of other proceedings in the case; or

6    (2) issue any other appropriate orders during the pendency of an appeal to
protect the rights of all parties in interest.

7  (Added Apr. 25, 2014, eff. Dec. 1, 2014.)

8                 *PRIOR RULE*

9   A prior Rule 8007, Apr. 25, 1983, eff. Aug. 1, 1983, as amended Mar. 30, 1987,
eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991, related to completion and
10  transmission of the record and docketing of the appeal, prior to revision of Part
VIII, Apr. 25, 2014, eff. Dec. 1, 2014.
11

12

13  4. Judge Cristol must recuse himself after entering the stay due to being disqualified due to being
sued by attorney Thomas Neusom.  The case number of the Federal Court suit against Judge A.
14  Jay Cristol is 1:18CV24517.

15

16  WHEREFORE, Neusom prays that the Court:

17
    1.   Stay further proceedings in Case No. 18-15825 during the Pendency of Thomas Neusom's
18        Bankruptcy Appeal with Case No. 18-cv-24463-FAM

19    2.   Recuse Judge Cristol from the case after entry of the Stay during the Appeal.

20

21
  .Dated: October 30, 2018:
22

23

24                            By:/s/Thomas Neusom
                            Attorney For Debtor
25                            Bar No. 003717
                            (954)200-3536
26                            4737 N. Ocean Drive, #129
27                            Fort Lauderdale, FL 33308

                         3
28

Email: tgnoffice35@gmail.com

1

2

CERTIFICATE OF SERVICE

3

4    I HEREBY CERTIFY that a true and correct copy of the foregoing **COUNSEL'S MOTION FOR RECUSAL OF JUDGE A. JAY CRISTOL AND REQUEST FOR STAY**

5    was furnished by email to the following on October 30, 2018, to the parties on the efiling portal service list by email.

6

7

8

9    By:/s/Thomas Neusom
     Attorney For Debtor

10   Bar No. 0037174
     Phone; (954)200-3536

11   4737 N. Ocean Drive, #129
     Fort Lauderdale, FL 33308

12   Email: tgnoffice35@gmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

2       UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

3

4                                                       **CASE NO:**

5 THOMAS NEUSOM

                                                      **COMPLAINT FOR DAMAGES:**

6 THOMAS NEUSOM, P.A.

7 PLAINTIFFS                                              **CAUSES OF ACTION**

8 VS.                                                   **FRAUD**

9 BRIAN HOLLAND                           **VIOLATION OF UNITED STATES CONSTITUTION EQUAL PROTECTION AND DUE PROCESS CLAUSES**

10 ANDREA HOLLAND

11 PETER RUSSIN

12 JUDGE A. JAY CRISTOL IN AN OFFICIAL CAPACITY

13 A. JAY CRISTOL INDIVIDUALLY                      **JURY TRIAL DEMANDED**

14

15 JOSEPH A. COLLETTI

16

17

18

19

20

21 **1.COMES NOW**, Attorney Thomas Neusom,  bringing a lawsuit against the Defendants for

22 Fraud and for Violation of The United States Constitution, Civil Rights Laws  and illegal

23 racial discrimination.

24

25

26

27                                      1

28

                                                          Exhibit C

1

**Jurisdiction**

2

**Federal Question Jurisdiction**

3

4  2. This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises

5  pursuant to the United States Constitution and Civil Rights Laws.

6

7

**Venue**

8

9  3. Venue is proper pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint

10  happened in this district.

11

**Parties**:

12

THOMAS NEUSOM

13

THOMAS G. NEUSOM, P.A.

14

PLAINTIFFS

15

VS.

16

BRIAN HOLLAND

17

ANDREA HOLLAND

18

PETER RUSSIN

19

JUDGE A. JAY CRISTOL IN AN
OFFICIAL CAPACITY

20

21  A JAY CRISTOL INDIVIDUALLY

22

JOSEPH A. COLLETTI

23

24

25

26

27

28

2

**Statement of Facts**

4. On May 30, 2018, Attorney Peter Russin filed LANDLORD'S MOTION FOR SANCTIONS PURSUANT TO BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105 in Case No. 18-15825-AJC.

5. On October 4, 2018, Judge A. Jay Cristol entered incorrect illegal Findings Of Fact And conclusions Of Law in Case No. 18-15825. More specifically FINDINGS OF FACT AND CONCLUSIONS OF LAW ON BRIAN AND ANDREA HOLLANDS MOTION FOR SANCTIONS UNDER BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105.

6. The hearings leading up to the entering of the Order were handled in a way that violated the United States Constitution's Equal Protection Clauses and the Due Process Clause. For instance, Judge Cristoll threatened to put Attorrney Thomas Neusom in Federal Detention with no explanation or justification, among other things.

7. During a hearing on September 28, 2018 when Neusom was examining Joseph Colletti Judge Cristol interrupted numerous times and objected to the questions of Neusom in order to stop him from obtaining testimony that was effectively showing that Holland had no case.

8. The illegal bias against Neusom was open and clear numerous times and violated the Constitutional, and legal and civil rights of Neusom.

3

9. The October 4, 2018 Findings Of Fact And Conclusions Of Law of Judge A. Jay Cristol contains material misstatements such as Neusom lied to Colletti. This is untrue. Neusom may have contacted Colletti to settle the case or get information about the eviction such as the status of the lease to determine whether the personal Bankruptcy entitled Perez to a Stay. Colletti misunderstood and didn't realize not any Bankruptcy by Perez would entitle A Plus to a Stay. It depended on the language in the Lease which Neusom did not have when he contacted Colletti and he was trying to obtain it if it existed.

10. When Neusom took the case he had to obtain company records, contracts and other documents from creditors because Perez did not have them or was unable to get them to Neusom.

11. The plain and concise statement of the illegality Plaintiff Neusom was subjected to by Defendants is fully explained in the Causes of Action Claims.

4

**CLAIMS**

**FIRST CAUSE OF ACTION**

**FRAUD**

12. Plaintiff Thomas Neusom brings a claim for Fraud against the Defendants.

Fraud is the purposeful falsification of information, the perversion of the truth, or the false

representation of a matter of fact.

13.On May 30, 2018, Attorney Peter Russin filed  LANDLORD'S MOTION FOR SANCTIONS

PURSUANT TO BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105  In Case No.  18-15825-

AJC

14. On October 4, 2018, Judge A. Jay Cristol entered factually incorrect illegal Findings Of Fact

And conclusions Of Law in Case No. 18-15825.  M ore specifically FINDINGS OF FACT AND

CONCLUSIONS OF LAW ON BRIAN AND ANDREA HOLLANDS MOTION FOR

SANCTIONS UNDER BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105.

15. The hearings leading up to the entering of the Order were handled in a way that was
fraudulent and violated the United States Constitution's Equal Protection Clauses and the Due
Process Clause.  For instance, at the first sanction hearing on July 27, 2018 Judge Cristol
threatened to put Attorney Thomas Neusom in Federal Detention with no explanation or
justification, among other things.

16. During a hearing on September 28, 2018 when Neusom was examining Joseph Colletti Judge
Cristol interrupted numerous times and objected to the questions of Neusom in order to stop him
from obtaining testimony that was effectively showing that Holland had no case.  He never once
interrupted or objected to Holland's Counsel.

5

17. The illegal bias against Neusom was open and clear numerous times and violated the Constitutional and civil rights of Neusom.

18. The October 4, 2018 Findings Of Fact And Conclusions Of Law of Judge A. Jay Cristol contains material misstatements such as Neusom lied to Colletti. This is untrue. Neusom may have contacted Colletti to get information about the eviction such as the status of the lease to determine whether the personal Bankruptcy entitled Perez to a Stay. Colletti misunderstood and didn't realize not any Bankruptcy by Perez would entitle A Plus to a Stay. It depended on the language in the Lease which Neusom did not have when he contacted Colletti and he was trying to obtain it if it existed.

19. Nubia Perez is from does not speak English well and was not good at keeping records. When Neusom took the case he had to obtain company records, contracts and other documents from creditors because Perez did not have them or was unable to get them to Neusom.

20. The Motion For Sanctions filed by Russin was a Fraud as well as the Order granting it because there is no law supporting it. The Order is a random act based on lies, misrepresentations and material omissions. The ruling is the product of illegal bias and is racially discriminatory against Neusom.

6

21. It appeared that the Court denied the Motion To Abstain, but granted it by limiting their motion to the Bankruptcy issues and not allowing claims on the State Court eviction action. But the final Order of Cristol awards damages for delay of the eviction but the eviction Judge Boker did not award damages and Alex Borell eviction Counsel said the Rent Registry Order was not violated by a Bankruptcy, yet Cristol awarded damages anyway for a case that was not even his. This Order goes beyond his authority and he should have abstained as requested by Neusom and Perez. This Sanction Order is a fraud with no legal basis and ordering Neusom to pay $30,000 by a flawed judicial decree is a form of strong arm robbery.

22. The facts essentially undercuts Landlord's claim for damages because the eviction was the basis for the claim for damages, but this is erroneous because Holland's Motion For Sanctions is fully and completely dependent on things that took place in the eviction and that needs to be handled by the state court as plaintiff has argued. The Court essentially recasted the Sanctions motion while the appropriate thing would have been to abstain, strike or deny the motion.

23. Debtor presented numerous motions to the Court which included a Motion To Abstain, to Strike, or for Summary Denial of Holland's motion For Sanctions. A Motion In Limine and a Motion To Strike Colletti's testimony due to a Violation of Rule 408 of the Federal Rules of Civil Procedure was also presented.

7

24. It is clear that there was no legal basis to grant Holland sanctions and granting it was a Fraud. Holland's primary witness was Colletti who said that during a telephone conversation with Neusom, which Neusom made for settlement purposes, he was told that a Bankruptcy was filed and because of this he cancelled a mediation and somehow a stay was entered in an eviction case.

25. Neusom was not an attorney in the eviction case and he was unaware that Colletti cancelled the mediation and somehow arranged for a stay. Due to not being eviction Counsel Neusom did not know Coletti was doing this and he did not know Colletti had done it until months later. Holding Neusom liable under these facts is a fraud.

26. Sometime around May 15, 2018, Colletti and Holland hired Bankrutpcy Counsel and Colletti was informed that what he had did may have been incorrect even though the eviction Court Judge Boker issued no sanction for the stay and made no finding of a violation. Colletti blamed Neusom and sanctions were sought against him for what Colletti did in the eviction case. Perez's eviction Counsel was Borell.

27. Colletti violated the Florida Rules of Professional Responsibility when he litigated the bankruptcy issues in the eviction case with insufficient knowledge and experience. He should have obviously obtained Co-counsel or sought advice before he acted and claims against Neusom or Perez are meritless and granting sanctions is a fraud and is indicative of bias.

**28. 4-1. CLIENT-LAWYER RELATIONSHIP RULE 4-1.1 COMPETENCE** A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Comment Legal knowledge and skill In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances. A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question. Competent representation may also involve the association or retention of a non-lawyer advisor of established technological competence in the field in question. Competent representation also involves safeguarding confidential information relating to the representation, including, but not limited to, electronic transmissions and communications. In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest. A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also rule 4-6.2. Thoroughness and preparation Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances. Maintaining competence To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, including an understanding of the benefits and risks associated with the use of technology, and comply with all continuing legal education requirements to which the lawyer is subject.

Amended March 23, 2006, effective May 22, 2006 (SC04-2246), (933 So.2d 417); September 29, 2016, effective January 1, 2017 (SC16-574), 200 So.3d 1225.

RRTFB September 17, 2018

9

29. The facts are that Neusom filed a personal Bankruptcy for Nubia Perez. In the Petition he only answered the Bankruptcy petition questions and Judge Cristol granting sanctions against Neusom under these circumstances is fraudulent and racially discriminatory and a violation of Equal Protection.

30. The Court seemed to state that it would grant sanctions because Neusom spoke to Colletti about a bankruptcy and Colletti then took actions in the eviction. A finding for Holland granting sanctions was a clearly erroneous ruling and a fraud under the circumstances.

31. In Court and on the Court CD Transcript Judge Cristol said if Neusom did not file the Suggestion of Bankruptcy he may be off the hook for sanctions. It is undisputed that Neusom did not file a suggestion of bankruptcy, therefore the Motion For Sanctions should have been denied. And any claim that Neusom is responsible for someone else filing a Suggestion of Bankruptcy is frivolous. A Condition Precedent for dismissal may have occurred and the Motion For Sanctions should have been summarily denied.

32. The A Plus eviction judgment is final and no sanctions were awarded for the stay by the eviction Court. The rules on finality of judgments should have been respected and the Bankruptcy Court should have abstained from hearing Holland's sanction motion or denied it. Granting it was a fraud.

33. Neusom objected to Colletti's testimony because any calls made to him by Neusom in the Course of settlement negotiations were inadmissible settlement communications.

10

34. Colletti is an experienced attorney and for him to try to claim Neusom misled him is shameful, and has no legal basis, particularly when Colletti had the Lease and Neusom did not have it or had a chance to review it prior to speaking to Colletti.

35. At the hearing on August 16, 2018 Utibe Ikpe said that Hollands eviction attorney put in for the stay after he heard about the Nubia Perez bankruptcy. Engaging in such an act is a waiver of any defenses or of Holland bringing a motion for sanctions. Holland assumed the risk. Neusom could have filed a Suggestion of Bankruptcy when the petition was filed, but it depended on a number of factors and he was unsure if it should have been filed at that time and under the circumstances so he did not do it.

36. Holland hired an Attorney, Joseph Colletti, who mistakenly cancelled a mediation and put in a stay and Holland hired another attorney to seek sanctions against Neusom for a stay that his Attorney put in. This is inconsistent illogical bad faith litigation. There is no privity between Neusom and Colletti. The only person Holland has a right to seek sanctions from is his own Attorney Colletti, who allegedly put in the stay without any request or authorization from Nubia Perez or Thomas Neusom that Neusom is aware of. Colletti did what he thought was the right thing to do and it is fraudulent to try to hold Neusom responsible for that.

11

Case 1:18-cv-24527-FAM Document 1 Entered on FLSD Docket 10/29/2018 Page 127 of 39

37. Neusom did file a personal bankruptcy for Perez but he did not immediately file a Notice of Appearance in the Eviction case and file for a stay. A lot more research had to be done before someone acted like Holland's attorney Colletti did. There is no basis for sanctions against Perez or Neusom for what Holland's attorney Coletti did and the sanctions are a fraud.

38. Due to the state Court dependence of the motion for sanctions it is quite clear that the Bankruptcy court should have granted the motion to abstain and granting sanctions was a fraud. Perez and A Plus were legally entitled to a stay and would have obtained it with a business bankruptcy if needed but Colletti's actions made it unnecessary at that time.

39. It was wrong for Holland to seek sanctions against Nubia Perez and Thomas Neusom for what his own attorney, Colletti, unexpectedly did. But it could have been legally correct so there is no basis for sanctions. It was Colletti's choice. And A Plus was prepared to file the business bankruptcy when needed so the stay could have been obtained one way or another if needed so therefore seeking and granting sanctions is clearly a fraud.

40. Holland received Nine Thousand Dollars ($9,000.00)from the Court registry. And he has refused to return the Eighteen Thousand Dollar ($18,000) A Plus Security Deposit. They have already received Twenty Seven Dollars ($20,000.00) from A Plus and they are not entitled to anything else and are seeking a double recovery which defendants are fraudulently seeking from Neusom and could obtain from the sanctions Order of Judge Cristol.

12

**A. A Federal Bankruptcy court cannot act as a State Appellate Court. The Landlord Holland needs and needed to seek relief in the State Court and the Bankruptcy Court Should Not Have Acted Like a State Trial Court or State Appellate Court, which Holland Sought And The Court Granted**

41. Holland filed an eviction against A Plus Lamination And Finishing in Miami Dade County with Case Number 18-8187CC05. Holland sought sanctions against Perez and her Counsel Thomas Neusom in Federal Bankruptcy Court for what happened in a State Court eviction action that had been closed and a default Final Judgment has been entered. State Court is the proper place for them to seek their remedy.

42. The landlord Holland obtained a Writ Of Possession and obtained possession of the subject property. The eviction case is closed at this time and Holland has refused to return the A Plus Lamination Security Deposit or follow proper procedures in violation of State Law.

43. The Bankruptcy Court has no legal basis or jurisdiction to further adjudicate a State Court matter under numerous legal doctrines. What the Bankruptcy Judge A. Jay Cristol did is a fraud against Neusom.

44. The Bankruptcy Court has no jurisdiction to act as a State Appellate Court even under BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105.

13

## B. THE 21 DAY SAFE HARBOR PROVISION WAS NOT COMPLIED WITH AND THE EXCEPTION DOES NOT APPLY

45.Bankruptcy Rule 9011 was also incorrectly used and invoked because Holland did not comply with the 21 day safe harbor provision.   The sanction motion says it is for filing the bankruptcy Petition and taking it to state Court.  Therefore it is really about invoking it against the Registry Order and not the filing of the petition so the 21 day safe Harbor provision should have been complied with.  The Defendant's complete disregard or unjustifiable excuse for not complying with the 21 Day Safe Harbor provision is a fraud.

46.Attorney Thomas Neusom was not the eviction attorney and was not at the hearing when the stay  was imposed.  The state court judge determined it should be imposed and no one in the State Court action initially contested this and this is where the real problem lies.

47.If the Landlord's Attorney did not agree with the stay, they should have filed a Motion For Rehearing or withdrew what Colletti filed to cancel the mediation and possibly get the stay, if he obtained it.

48. Due to the landlord Attorney's failure to take proper action in the state court proceeding the stay may have been put in improperly and it stayed when it shouldn't have but this was actually a decision for the state court judge and eviction attorneys to make and it depended on a number of issues such as the Lease.  Neusom is not responsible and to try to hold him responsible when he was not in the case is a fraud.

14

1    49 APLUS Lamination Manager Kathy Ware told Neusom that the A Plus eviction Attorney

2    Alex Borell said that the Rent Registry Order would not be violated by the filing of a

3    Bankruptcy.

4

5    50. The Rent Registry Order does not say a Bankruptc is a violation and Judge Boker granted a

6    Bankruptcy Stay without sanctioning or punishing APlus in any way.

7

8

9    51. The circumstances under which the Stay was entered is a separate issue.  But the fact that

10    Judge Boker was accepting of a Bankruptcy as not a violation of the Rent Registry Order is clear.

11    So under these facts it would be clear error for the Bankruptcy Judge to declare a violation of

12    another Judges order where the issuing  Judge found no error.

13

14

15    52. Holland and Colletti's entire basis for seeking sanctions seems to be based on a phone

16    conversation where Neusom allegedly told him something.  This phone call was

17    inadmissible under Federal Rule of Evidence 408 as Compromise Negotiations and

18    inadmissible hearsay under Rule 802.  Even if the statement or call is admissible under an

19    exception like state of mind it would not be admissible for its truth, the way the Court is

20    admitting it.

21

22

23

24

25

26

27                                                 15

28

1
2
3
4

### Rule 408 – Compromise Offers and Negotiations

5
6

(a) **Prohibited Uses**. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

7
8

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

9
10

(2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

11
12
13

(b) **Exceptions**. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

14
15
16

**53. Rule 802. The Rule Against Hearsay** Hearsay is not admissible unless any of the following provides otherwise: • a federal statute; • these rules; or • other rules prescribed by the Supreme Court. (As amended Apr. 26, 2011, eff. Dec. 1, 2011.)

17

54. It is clear that granting sanctions is error and a fraud.

18
19

55. The Bookkeeper for Holland testified about the Twenty Thousand Dollar

20

($20,000.00) security deposit, the claimed balance owed so the facts are pretty clear.  Holland's

21

remedy is in the eviction court, not the Bankruptcy court with a bogus fraudulent sham Motion

22

for Sanctions which clearly should not have been granted and which Neusom and Perez

23

respectfully requested that the Court Vacate. Ordering Neusom to pay Thirty Thousand Dollars

24

($30,000.00) to Colletti and Holland for Colletti's mistake is clear error, racism and is arguably a

25

form of judicially sanctioned theft. It is and will be appealed and I sincerely believe the Order

26
27

will not stand.

28

16

56. From what Neusom remembers he likely told Coletti Perez filed a Personal Bankruptcy and she is prepared to file a Business Bankruptcy. But I need a copy of the lease to determine if we are entitled to a Stay and how to proceed. But I did not ask for a stay or anything in particular other than a complete settlement of the case. If Colletti went for a stay based on one settlelement conversation that is up to him if he felt it was the right thing to do .

57.Neusom did not even know he had done it until months later.  I was not retained to be eviction counsel and never appeared in the case.  Colletti moved slowly to lit the stay and to hold Neusom liable for Colletti's slowness is a fraud.

58.But at this point Appeal is not enough, Neusom had to file a lawsuit to address the injustice and fraud he has been subjected to.  The Court wants to shut down Neusom's  bankruptcy practice for a year for what Colletti did and that hurts Neusom financially and in many other ways.  Neusom seeks damages for Fraud and Constitutional Violations.

59.  And while  not accepted as fair, the Court's $30,000.00 sanction seems to be based on two months of delay for rerenting Hollands space.. This is also error because any competent eviction Attorney should  have or could have discovered there error in a few days and could have had the stay lifted sooner if they or Colletti wanted to.  Waiting two months and to charge Neusom for two month's of Colletti's mistake is unconscionable, illegal and a fraud which Colletti and Russin controlled, not Neusom.

17

**C. RULE 9001 SAYS THAT SANCTIONS NEED TO BE APPROPRIATE AND LIMITED TO WHAT IS SUFFICIENT AND THE COURT GRANTING $30,000 IS A FRAUD**

60. Neusom is still unaware of any legitimate bases for granting sanctions against him for Colletti's admitted error. Nor was there a basis for granting sanctions under Rule 9011. The size of the sanction is also indefensibly high and a fraud because Collettis own bookkeeper testified A Plus was moving out of the space during the period Neusom is being sanctioned and asked to pay for. This is a Holland lease issue that cannot legally be transformed to the Law Office Of Thomas G. Neusom, P.A. tab. This is fraud and is going to bankrupt the Office.

61.

**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers**

The relevant portions of the Rule for this Complaint states:

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

(A) *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

18

(B) *On Court's Initiative*. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) *Nature of Sanction; Limitations*. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

62. The case law cited in Holland's own motion gives guidance on what an appropriate sanction is.

63. In Re Douglas, 141 B.R. 252 (Bankr. N.D. Ga. 1992)

United States Bankruptcy Court, N.D. Georgia

**Filed:** March 20th, 1992
**Precedential Status:** Precedential
**Citations:** 141 B.R. 252
**Docket Number:** Bankruptcy No. A91-64357-SWC
**Judges:** Stacey W. Cotton

When granting sanctions in the Douglas case the court concluded by stating:

"In its motion, California Federal seeks attorney's fees and expenses incurred in preparing and presenting the emergency motion to dismiss debtor's Chapter 13 case and its motion for sanctions. Bankruptcy Rule 9011 authorizes the court to impose ". . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." Fed.R.Bankr.P. 9011. Sanctions may include the reasonable expenses of pursuing the Rule 11 claim. *Mike Ousley Prod. Inc.,* 952 F.2d at 383-84. Counsel for California Federal has filed an affidavit setting forth an itemization of the services rendered and expenses incurred in preparing the motions to dismiss and for sanctions. This affidavit states that California Federal incurred $1,630.25 in fees and expenses. Having examined the itemization of services and expenses, the court finds and concludes that the hourly rates charged are within the range of hourly rates

19

1
2
3
4

charged by attorneys and paraprofessionals of comparable skill, experience and reputation. The services rendered were reasonable and necessary in the filing and prosecution of these motions in response to this abusive and improper serial bankruptcy filing. Accordingly, California Federal's motion for sanctions is granted. The court imposes sanctions upon debtor's counsel, Milton D. Jones, for California Federal's attorney's fees and expenses in the sum of $1,630.25." **141 B.R. 252 (1992)**

5
6

In re Harold DOUGLAS, Debtor. CALIFORNIA FEDERAL BANK, FSB, Movant, v. Harold DOUGLAS, Respondent. Bankruptcy No. A91-64357-SWC. **United States Bankruptcy Court, N.D. Georgia, Atlanta Division.** March 20, 1992.

7
8
9

64. In Re Morgan, 85 B.R. 622 (Bankr. M.D. Fla. 1987)

10

United States Bankruptcy Court, M.D. Florida

11

**Filed:** October 26th, 1987
**Precedential Status:** Precedential
**Citations:** 85 B.R. 622
**Docket Number:** Bankruptcy No. 87-4663
**Judges:** Alexander L. Paskay

12
13
14

When granting sanctions in the Morgan case, the Court concluded by stating:

15
16
17
18
19

"Clearly, it was not the intent of Congress to allow Debtors to file Chapter 7 Petitions for the singular purpose of delaying the inevitable conclusion of foreclosure. As it is admitted by the Debtor's counsel that the sole purpose for filing the Debtor's petition was to prevent and delay the foreclosure sale by C & S, this Court is satisfied that sanctions in the amount of $1,000.00 should be imposed jointly and severally against the Debtor and her attorney, Michael Steinberg, to compensate for attorney fees incurred in connection with the aborted foreclosure sale.

20
21

It should be noted, however, that the imposition of these sanctions should be conditioned upon the occurrence of a proposed sale of the property in dispute, as in the event the property is sold, C & S will receive compensation for attorney fees incurred by means of the sale proceeds.

22

Accordingly, it is

23
24

ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions against Debtor and Debtor's Counsel be, and the same is hereby, granted, and Janet Morgan and Michael Steinberg are hereby directed to pay C & S $1,000.00 in the event the proposed sale of the Debtor's property does not occur. It is further

25
26

ORDERED, ADJUDGED AND DECREED that in the event the proposed sale does not occur, C & S may seek an Order by this Court directing Janet Morgan and Michael Steinberg to make payment in the amount of $1,000.00 as sanctions." **85 B.R. 622 (1987)** In re Janet K. MORGAN,

27

20

28

Debtor. Bankruptcy No. 87-4663. **United States Bankruptcy Court, M.D. Florida, Tampa Division.** October 26, 1987.

65. In Re McBride Estates, Ltd., 154 B.R. 339 (Bankr. N.D. Fla. 1993)

United States Bankruptcy Court, N.D. Florida

**Filed:** March 26th, 1993
**Precedential Status:** Precedential
**Citations:** 154 B.R. 339
**Docket Number:** Bankruptcy No. 92-07497
**Judges:** Lewis M. Killian, Jr.

When granting sanctions in In Re Mcbride the Court concluded by stating:

"Based on the foregoing findings, we find that the filing of the Chapter 11 petition by McBride and its resistance to Barnett's motion for relief from the stay were done for an improper purpose, that is the unnecessary delay in the completion of the foreclosure sale by Barnett Bank, and that such petition and opposition were not well grounded in fact or warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. B.R. 9011. The costs incurred by Barnett as a result of the actions of McBride Estates and its attorney in filing the petition for relief under Chapter 11 and resisting the motion for relief from stay are as follows:

1) $1,440.88 publication costs for foreclosure sale.

2) $190.00 paralegal expenses preparing for foreclosure sale.

3) $2,340.50 attorney's fees in connection with the motion for relief from stay.

*344 4) $60.00 filing fee for motion for relief from stay.

5) $500 attorney's fees in connection with the motion for sanctions.

Total $4,531.38.

**154 B.R. B**339 **(1993)** In re McBRIDE ESTATES, LTD. Debtor. Bankruptcy No. 92-07497. **United States Bankruptcy Court, N.D. Florida, Tallahassee Division.** March 26, 1993.

The In In Re Mcbride the sanction was $2,840.00.

66. A review of the three of Holland's own cited cases shows that an appropriate sanction ranges from One Thousand Dollars ($1,000.00) to Two Thousand Eight Hundred Dollars Forty Dollars. ($2,840.00).

67. The Thirty Thousand Dollar ($30,000.00) sanction the Court is attempting to impose on Neusom is clearly excessive, unwarranted, fraudulent, is not appropriate or limited and does not comply with 9001.

68. Neusom denys wrongdoing, does not admit to liability and believe granting sanctions is wrong.

69. The eviction case with its security deposit, dumpster fee claims, move out delay and other issues is a separate matter Defendants including Judge A. Jay Cristol cannot hold Neusom liable for legally and damages of no less than Eighty Thousand Dollars ($80,000.00) are sought according to proof because the Law Office of Thomas G. Neusom has had to work over 50 hours on the sanctions motion. The Findings of Fact and Conclusions of Law Order were fraudulently obtained and granted.

1

2

3 **SECOND CAUSE OF ACTION**

4 **VIOLATION OF THE EQUAL PROTECTION CLAUSE AND FIFTH AMENDMENT**
**DUE PROCESS**

5

6 70.On May 30, 2018, Attorney Peter Russin filed  LANDLORD'S MOTION FOR SANCTIONS

7 PURSUANT TO BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105
 In Case No.  18-15825-AJC

8

9 71.On October 4, 2018, Judge A.  Jay Cristol entered illegal Findings Of Fact And conclusions

10 Of Law in Case No. 18-15825.  M ore specifically FINDINGS OF FACT AND

11 CONCLUSIONS OF LAW ON BRIAN AND ANDREA HOLLANDS MOTION FOR

12 SANCTIONS UNDER BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105.

13

14 72. The October 4, 2018 Findings Of Fact And Conclusions Of Law of Judge A. Jay Cristol

15 contains material misstatements such as Neusom lied to Colletti.  This is untrue. Neusom may

16 have contacted Colletti to get information about the eviction such as the status of the lease to

17

18 determine whether the personal Bankruptcy entitled Perez to a Stay.  Colletti misunderstood and

19 didn't realize not any Bankruptcy by Perez would entitle A Plus to a Stay. It depended on the

20 language in the Lease which Neusom did not have when he contacted Colletti and he was trying

21

22 to obtain it if it existed.

23

24

25

26

27 23

28

73. Nubia Perez is from Columbia and does not speak English well and was not good at keeping records. When Neusom took the case he had to obtain company records, contracts and other documents because Perez did not have them or was unable to get them to Neusom.

74. The hearings leading up to the entering of the Order were handled in a way that was fraudulent and violated the United States Constitution's Equal Protection Clauses and the Due Process Clause. For instance, at the first sanction hearing on July 27, 2018 Judge Cristoll threatened to put Attorney Thomas Neusom in Federal Detention with no explanation or justification, among other things.

75. During a hearing on September 28, 2018 when Neusom was examining Joseph Colletti Judge Cristol interrupted numerous times and objected to the questions of Neusom in order to stop him from obtaining testimony that was effectively showing that Holland had no case.

The illegal bias against Neusom was open and clear numerous times and violated the Constitutional and civil rights of Neusom.

76. The Motion For Sanctions filed by Russin was a Fraud as well as the Order granting it because there is no law supporting it. The Order is a random act based on lies, misrepresentations and material omissions. The ruling is the product of illegal bias and is racially discriminatory against Neusom. The way in which the Court proceedings were held and the outcome violates Equal Protection Laws and Due Process.

24

77. The **Equal Protection Clause** is part of the Fourteenth Amendment to the United States Constitution. The clause, which took effect in 1868, provides that no state shall deny to any person within its jurisdiction "the equal protection of the laws".

A primary motivation for this clause was to validate the equality provisions contained in the Civil Rights Act of 1866, which guaranteed that all citizens would have the guaranteed right to equal protection by law. As a whole, the Fourteenth Amendment marked a large shift in American constitutionalism, by applying substantially more constitutional restrictions against the states than had applied before the Civil War.

78.The meaning of the Equal Protection Clause has been the subject of much debate, and inspired the well-known phrase "Equal Justice Under Law". This clause was the basis for *Brown v. Board of Education* (1954), the Supreme Court decision that helped to dismantle racial segregation, and also the basis for many other decisions rejecting discrimination against, and bigotry towards, people belonging to various groups.
While the Equal Protection Clause itself applies only to state and local governments, the Supreme Court held in *Bolling v. Sharpe* (1954) that the Due Process Clause of the Fifth Amendment nonetheless imposes various equal protection requirements on the federal government.

79.By its terms, the clause restrains only state governments. However, the Fifth Amendment's due process guarantee, beginning with *Bolling v. Sharpe* (1954), has been interpreted as imposing some of the same restrictions on the federal government: "Though the Fifth Amendment does not contain an equal protection clause, as does the Fourteenth Amendment which applies only to the States, the concepts of equal protection and due process are not mutually exclusive."[42] In *Lawrence v. Texas* (2003) the Supreme Court added: "Equality of treatment and the due process right to demand respect for conduct protected by the substantive guarantee of liberty are linked in important respects, and a decision on the latter point advances both interests" [43] Some scholars have argued that the Court's decision in *Bolling* should have been reached on other grounds. For example, Michael W. McConnell has written that Congress never "required that the schools of the District of Columbia be segregated."[44] According to that rationale, the segregation of schools in Washington D.C. was unauthorized and therefore illegal.

80.The Fifth and Fourteenth Amendments to the United States Constitution each contain a **due process clause**. Due process deals with the administration of justice and thus the due process clause acts as a safeguard from arbitrary denial of life, liberty, or property by the government outside the sanction of law.[1] The Supreme Court of the United States interprets the clauses more broadly, concluding that these clauses provide four protections: procedural due process (in civil and criminal proceedings), substantive due process, a prohibition against vague laws, and as the vehicle for the incorporation of the Bill of Rights.

25

**State actor**

81. The prohibitions, generally, of the due process clauses apply only to the actions of state actors, and not against private citizens. However, where a private person is acting jointly with state officials in a prohibited action, they are said to be acting under the "color of the law" for the purposes of 42 U.S.C. § 1983.[20] While private actors are not generally held to the actions of private citizens, it remains that private citizens may be held criminally liable for a federal felony or misdemeanor, if they conspire with the government to commit actions which violate the due process clauses of the constitution.[21][22]

**Procedural due process**

82. Procedural due process requires government officials to follow fair procedures before depriving a person of life, liberty, or property.[23]:657 When the government seeks to deprive a person of one of those interests, procedural due process requires the government to afford the person, at minimum, notice, an opportunity to be heard, and a decision made by a neutral decisionmaker.

83. This protection extends to all government proceedings that can result in an individual's deprivation, whether civil or criminal in nature, from parole violation hearings to administrative hearings regarding government benefits and entitlements to full-blown criminal trials. The article "Some Kind of Hearing" written by Judge Henry Friendly created a list of basic due process rights "that remains highly influential, as to both content and relative priority".[24] These rights, which apply equally to civil due process and criminal due process, are:[24]

1. An unbiased tribunal.
2. Notice of the proposed action and the grounds asserted for it.
3. Opportunity to present reasons why the proposed action should not be taken.
4. The right to present evidence, including the right to call witnesses.
5. The right to know opposing evidence.
6. The right to cross-examine adverse witnesses.
7. A decision based exclusively on the evidence presented.
8. Opportunity to be represented by counsel.
9. Requirement that the tribunal prepares a record of the evidence presented.
10. Requirement that the tribunal prepares written findings of fact and reasons for its decision.

*Civil procedural due process*

84. Procedural due process is essentially based on the concept of "fundamental fairness". For example, in 1934, the United States Supreme Court held that due process is violated "if a practice or rule offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental".[25] As construed by the courts, it includes an individual's right to be adequately notified of charges or proceedings, the opportunity to be heard at these proceedings, and that the person or panel making the final decision over the proceedings be impartial in regards to the matter before them.[26]

85. To put it more simply, where an individual is facing a deprivation of life, liberty, or property, procedural due process mandates that he or she is entitled to adequate notice, a hearing, and a neutral judge.

86. The Supreme Court has formulated a balancing test to determine the rigor with which the requirements of procedural due process should be applied to a particular deprivation, for the obvious reason that mandating such requirements in the most expansive way for even the most minor deprivations would bring the machinery of government to a halt. The Court set out the test as follows: "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[27]

87. The requirement of a neutral judge has introduced a constitutional dimension to the question of whether a judge should recuse himself or herself from a case. Specifically, the Supreme Court has ruled that in certain circumstances, the due process clause of the Fourteenth Amendment requires a judge to recuse himself on account of a potential or actual conflict of interest. For example, in *Caperton v. A. T. Massey Coal Co.* (2009), the Court ruled that a justice of the Supreme Court of Appeals of West Virginia could not participate in a case involving a major donor to his election to that court.[28]

27

88. Today, the Court focuses on three types of rights under substantive due process in the Fourteenth Amendment,[*citation needed*] which originated in *United States v. Carolene Products Co.*, 304 U.S. 144 (1938). Those three types of rights are:

- the first eight amendments in the Bill of Rights (e.g., the Eighth Amendment);
- restrictions on the political process (e.g., the rights of voting, association, and free speech); and
- the rights of "discrete and insular minorities".

89. Here, the Court has engaged in Unconstitutional acts to which Judicial immunity does not apply against Plaintiff, a minority person. Judge A. Jay Cristol threatened to put Attorney Thomas Neusom in federal detention for up to two weeks with no explanation or justification. This is and always was a civil bankruptcy case, not a criminal case.

90. From there he acted in a biased manner and favored the other side by refusing to apply and comply with the applicable law.

91. The Judge acted in a racially discriminatory manner by not adhering to equal protection principles and blaming a black man, Attorney Thomas Neusom, for the incompetence of Attorney Joseph Colletti, who appears to be white.

92. If you read the Findings of Fact And Conclusions of Law adopted by the Court it is nothing but garbage and a fanciful complicated tale that obfuscates and hides the truth and attempts to impose liability where there is none. It claims Neusom lied where there is no evidence of lying. Colletti was just confused and that's a fact. Neusom has no intention of allowing anyone to steal from him in violation of the law. A fraudulent show trial is not a trial if there is bias.

1
2    93. All of the facts of the Bankruptcy Case and the eviction were there for Jospeh Colletti to see.
3    Neusom is slandered and the victim of misrepresentation.  Colletti was free to do what he wanted
4    and he did what he chose to do.  Colletti is an experienced Attorney who hasa been practicing
5    over 20 years.  An y suggestion that Neusom misled him is ludicrous, Colletti apparently just did
6    not understand what he was doing and did not seek assistance until after made a mistake, which
     is a clear violation of the Florida Rules of Professional Responsibility.
7
8    94.Judge Cristol then goes on to try to impose liability where none exists.  Cristol admitted
9    settlement negotiation testimony over objection and in violation of Federal Rule of Evidence 408
10   and the testimony he allowed was filled with unverifiable untruths.  He allowed hearsay of an
11   alleged phone conversation for its truth and told Neusom something like, "It's a matter of
     credibility.  I believe him and not you. "  It was blatant, unequivocal bias, favoritism and racism
12   that was right in Neusom's face.  Equal Protection and Due Process were violated.

13   95. If the Findings Of Fact And Conclusions Of Law read like something out of an Episode of
14   Amos And Andy it's a reflection of what went on the Courtroom.  It was like slapstick or
15   Tomfoolery.  I was made the subject of a minstrel type show where the black person loses in the
16   end and is made to look silly, and in this case he illegally and Unconstitutionally gets stuck with
     an over Thirty Thousand Dollar ($30,000) ruling for the  acts of another's incompetence and
17   mistake, Joseph Colletti.  Bias and favoritism are clear.  Neusom if the victim of Equal
18   Protection and Due Process violations that can not be allowed to stand. It's illegal and Neusom is
19   suing.

20
21   96. Even if you believe the Court's interpretation that Neusom told Colletti something and he
     then acted foolishly, and changed his mind after seeking legal advice, there is no liability for
22   Neusom in this situation.  There was and is no privity between Neusom and Colletti under these
23   circumstances and facts. Colletti violated the rules of Professional Responsibility which follow,
24   so it is wrong and illegal to try to make Neusom responsible and liable.

25

26

27                                                    29
28

**97. 4-1. CLIENT-LAWYER RELATIONSHIP RULE 4-1.1 COMPETENCE** A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Comment Legal knowledge and skill In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances. A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question. Competent representation may also involve the association or retention of a non-lawyer advisor of established technological competence in the field in question. Competent representation also involves safeguarding confidential information relating to the representation, including, but not limited to, electronic transmissions and communications. In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest. A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also rule 4-6.2. Thoroughness and preparation Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances. Maintaining competence To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, including an understanding of the benefits and risks associated with the use of technology, and comply with all continuing legal education requirements to which the lawyer is subject.

Amended March 23, 2006, effective May 22, 2006 (SC04-2246), (933 So.2d 417); September 29, 2016, effective January 1, 2017 (SC16-574), 200 So.3d 1225.

RRTFB September 17, 2018

98. At one point Ikpe and Russin argue that even if there is no law or rule that imposes liability the Court has inherent authority to act even if there is no basis in the law for its actions, which is wholly untrue. The Court can not completely disregard the laws as it did hear. The way the Court acted is evidence of bias, racism and the Constitutional Rights of Neusom have been violated which entitles him to relief.

99. The following remedy Judge Cristol put in is unfathomable and illegal and violates Neusom's Constitutional rights.

**100. ORDERED AND ADJUDGED** that under Bankruptcy

Rule 9011 and 11 U.S.C. § 105 is **GRANTED IN PART** as follows:

1. Neusom is liable to Landlord in the total amount of $31,256, representing $2,000 in legal fees to Colletti; $20,000 to MRB for legal fees and $9,256.00 for lost rent. If not paid within thirty (30) days, Landlord may request the entry of a final judgment for the sanctions awarded herein.

2. Neusom is ENJOINED from practicing bankruptcy in any bankruptcy court in the United States for a period of one (1) year from entry of this Order, after which Neusom may apply for readmission to bankruptcy practice upon compliance with all the Local of the Court governing admission to practice and completing a total of eighteen (18) hours of Continuing Legal Education, consisting of twelve (12) hours of Continuing Legal Education in bankruptcy law and six (6) hours of ethics.

101. One of the biggest issues Plaintiff has is that Colletti was the one who took the actions that cost the landlord. He did not have to do it. If Colletti had not done it there would be no sanction. What Coletti did was beyond Neusom's control and he did not even know Coletti had done it.

1

2

3 102. Plaintiff did not know Colletti had acted incorrectly because he was not a litigant or retained

4 as Counsel in the eviction case so he really could not do much about it.  And Perez's eviction

5 Attorney told her office manager Kathy Ware that a bankruptcy would not violate any eviction

6 case order and Ware told this to Neusom so Neusom believed neither a personal or business

7 bankruptcy by Perez was a violation.  It is clear that Neusom is the victim once sanctions were

8 granted by Judge A. Jay Cristol and his Constitutional rights have been violated.

9 103. Judge Boker was the eviction Judge over Landlords case.  The Bankruptcy Judge is issuing

10 sanctions for what happened in the eviction Court where no finding of a violation was made by

11 the eviction Judge s an illegal usurptation of authority and disallowed co-judging.  Holland

needed to seek his sanction in the eviction court.

12

13 104. Attorney Alex Borell was the eviction Counsel for our joint client, Nubia Perez, and he said

14 that filing a bankruptcy was not a violation of the Rent Registry Order yet Cristol rules

15 differently when it's not even his eviction case and the eviction Judge issued no sanction when

16 he entered the stay in his own case.  This is clearly inconsistent, wrong and without legal basis

yet Judge Cristol did it anyway.  Plaintiff's request for abstention was wrongfully denied.

17

18 105.Judge Boker's Rent Registry Order, Motion To Lift the Stay and Final Judgment are being

19 filed concurrently herewith which proves everything Neusom has said is true. Cristol went far

20 beyond the limits of reasonable judging and for that liability must lie. Particularly when you look

at the sanction he leveled against Plaintiff and the sanction granted in similar cases.

21

22

23

24

25

26

27

28

32

106. The case law cited in Holland's own motion  gives guidance on what an appropriate

sanction is.

In Re Douglas, 141 B.R. 252 (Bankr. N.D. Ga. 1992)

United States Bankruptcy Court, N.D. Georgia

**Filed:** March 20th, 1992
**Precedential Status:** Precedential
**Citations:** 141 B.R. 252
**Docket Number:** Bankruptcy No. A91-64357-SWC
**Judges:** Stacey W. Cotton

When granting sanctions in the Douglas case the court concluded by stating:

"In its motion, California Federal seeks attorney's fees and expenses incurred in preparing and presenting the emergency motion to dismiss debtor's Chapter 13 case and its motion for sanctions. Bankruptcy Rule 9011 authorizes the court to impose ". . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." Fed.R.Bankr.P. 9011. Sanctions may include the reasonable expenses of pursuing the Rule 11 claim. *Mike Ousley Prod. Inc.,* 952 F.2d at 383-84. Counsel for California Federal has filed an affidavit setting forth an itemization of the services rendered and expenses incurred in preparing the motions to dismiss and for sanctions. This affidavit states that California Federal incurred $1,630.25 in fees and expenses. Having examined the itemization of services and expenses, the court finds and concludes that the hourly rates charged are within the range of hourly rates charged by attorneys and paraprofessionals of comparable skill, experience and reputation. The services rendered were reasonable and necessary in the filing and prosecution of these motions in response to this abusive and improper serial bankruptcy filing. Accordingly, California Federal's motion for sanctions is granted. The court imposes sanctions upon debtor's counsel, Milton D. Jones, for California Federal's attorney's fees and expenses in the sum of $1,630.25." **141 B.R. 252 (1992)**

In re Harold DOUGLAS, Debtor. CALIFORNIA FEDERAL BANK, FSB, Movant, v. Harold DOUGLAS, Respondent. Bankruptcy No. A91-64357-SWC. **United States Bankruptcy Court, N.D. Georgia, Atlanta Division.** March 20, 1992.

33

1    In Re Morgan, 85 B.R. 622 (Bankr. M.D. Fla. 1987)

2    United States Bankruptcy Court, M.D. Florida

3    **Filed:** October 26th, 1987
      **Precedential Status:** Precedential

4    **Citations:** 85 B.R. 622
      **Docket Number:** Bankruptcy No. 87-4663

5    **Judges:** Alexander L. Paskay

6

7    107. When granting sanctions in the Morgan case, the Court concluded by stating:

8

9    "Clearly, it was not the intent of Congress to allow Debtors to file Chapter 7 Petitions for the singular purpose of delaying the inevitable conclusion of foreclosure. As it is admitted by the Debtor's counsel that the sole purpose for filing the Debtor's petition was to prevent and delay

10   the foreclosure sale by C & S, this Court is satisfied that sanctions in the amount of $1,000.00 should be imposed jointly and severally against the Debtor and her attorney, Michael Steinberg,

11   to compensate for attorney fees incurred in connection with the aborted foreclosure sale.

12   It should be noted, however, that the imposition of these sanctions should be conditioned upon the occurrence of a proposed sale of the property in dispute, as in the event the property is sold,

13   C & S will receive compensation for attorney fees incurred by means of the sale proceeds.

14   Accordingly, it is

15   ORDERED, ADJUDGED AND DECREED that the Motion for Sanctions against Debtor and Debtor's Counsel be, and the same is hereby, granted, and Janet Morgan and Michael Steinberg

16   are hereby directed to pay C & S $1,000.00 in the event the proposed sale of the Debtor's property does not occur. It is further

17

18   ORDERED, ADJUDGED AND DECREED that in the event the proposed sale does not occur, C & S may seek an Order by this Court directing Janet Morgan and Michael Steinberg to make

19   payment in the amount of $1,000.00 as sanctions."**85 B.R. 622 (1987)** In re Janet K. MORGAN, Debtor. Bankruptcy No. 87-4663. **United States Bankruptcy Court, M.D. Florida, Tampa**

20   **Division.** October 26, 1987.

21

22

23   In Re McBride Estates, Ltd., 154 B.R. 339 (Bankr. N.D. Fla. 1993)

24   United States Bankruptcy Court, N.D. Florida

25   **Filed:** March 26th, 1993
      **Precedential Status:** Precedential

26   **Citations:** 154 B.R. 339
      **Docket Number:** Bankruptcy No. 92-07497

27

                            34

28

**Judges:** Lewis M. Killian, Jr.

108. When granting sanctions in In Re Mcbride the Court concluded by stating:

"Based on the foregoing findings, we find that the filing of the Chapter 11 petition by McBride and its resistance to Barnett's motion for relief from the stay were done for an improper purpose, that is the unnecessary delay in the completion of the foreclosure sale by Barnett Bank, and that such petition and opposition were not well grounded in fact or warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. B.R. 9011. The costs incurred by Barnett as a result of the actions of McBride Estates and its attorney in filing the petition for relief under Chapter 11 and resisting the motion for relief from stay are as follows:

1) $1,440.88 publication costs for foreclosure sale.

2) $190.00 paralegal expenses preparing for foreclosure sale.

3) $2,340.50 attorney's fees in connection with the motion for relief from stay.

*344 4) $60.00 filing fee for motion for relief from stay.

5) $500 attorney's fees in connection with the motion for sanctions.

Total $4,531.38.

**154 B.R. B339 (1993)** In re McBRIDE ESTATES, LTD. Debtor. Bankruptcy No. 92-07497. **United States Bankruptcy Court, N.D. Florida, Tallahassee Division.** March 26, 1993.

The In In Re Mcbride the sanction was $2,840.00.

109 A review of the three of Holland's own cited cases shows that an appropriate sanction ranges from One Thousand Dollars ($1,000.00) to Two Thousand Eight Hundred Dollars Forty Dollars. ($2,840.00). Neusom was sanctioned for over Thirty Thousand Dollars ($30,000.00), and the bulk of it was for things that took place in an eviction case that Cristol really doesn't even have authority over due to the Colorado River and other Abstention Doctrines and the fact that State and Federal Court's are separate and distinct. Neusom never filed a Notice of Appearance or filed anything in the eviction case he is being sanctioned for by Cristol. This is clearly Unconstitutional and illegal.

35

110. Russin and Colletti are con men and they should not be believed. Even if believed, there is no legitimate basis to hold Plaintiff liable for another lawyers incompetence. It is critical that the suit against Judge A. Jay Cristol be allowed to go forward in his official capacity and personally so he can be deposed, discovery can be served on him and the real reason he is doing what he is doing can be discovered. His actions are illegal and Unconstitutional and a jury trial is Demanded.

**WHETHER CONSCIOUS RACISM OR UNCONSCIOUS RACISM THE EFFECTS CAN BE DEVASTATING AND IF THE SANCTIONS ARE IMPOSED PLAINTIFF IS FILING A COMPLAINT WITH THE EEOC AND THE JUSTICE DEPARTMENT**

110. Russin told Plaintiff he has been practicing Bankruptcy Law over thirty years so he is highly experienced and an effective advocate. But an effective advocate is not an excuse for violation of the Equal Protection Clause and Due Process.

111. During a sanctions hearing Colletti stated he relied on what Plaintiff said as an Officer of the Court. But Colletti is an Officer of the Court as well and he had been involved with the eviction case possibly months before the eviction was filed. He had pertinent information Plaintiff did not have when Neusom called him. And Coletti took action and later changed his mind after he obtained Russin as Co-Counsel. Sanctioning Neusom for Thirty Thousand Dollars ($30,000.00) and not holding Colletti responsible for his own actions is unfair and racism in plaintiff's opinion. There must be some way to hold Judge's accountable just like everyone else is held accountable. The judge and jury is hopefully the way.

112. Plaintiffs seek damages against Judge A. Jay Cristol according to proof for Violation of Equal Protection and Due Process

**Request for Relief**

1

2    113. The Court should grant damages to Plaintiff and enjoin Judge Cristol from entering

3    Judgment against Neusom or reverse it if it is entered. If the Order can not be reversed

4    Defendants should pay to Plaintiff any money needed to pay the Judgment that was wrongfully

5    obtained plus his attorney's fees and costs and damages for violation of the law.

6

7    114. All EXHIBITS are concurrently filed and officially incorporated herewith into this
     Complaint.  They are:

8

9    1.October 4, 2018 Judge A. Jay Cristol Findings Of Fact And Conclusions Of Law

10   2.Eviction Judgment

11   3.Eviction Complaint

12   4. Eviction Rent Registry Order

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

115. Holland's motion for sanctions is without merit and the Order granting sanctions should have been Vacated. This lawsuit is necessary to obtain justice and it must be allowed to go forward because Plaintiff's rights have been violated.

116. Litigation is a process. If one files a lawsuit you don't go to trial the next day, week, or even month. There is time for motions, discovery, depositions., document production requests. All of the information is not always readily available and that is what happened in the bankruptcy case. Time and work was needed to get all of the bankruptcy case information.

117. In the course of the case Colletti made a mistake, but it was not the fault of Plaintiff and Plaintiff did not intentionally lie to Coletti. Coletti also had the information such as the lease that should have let him know what to do. The Plaintiff Neusom is not responsible for Colletti and Holland and to claim he is is a violation of Equal Protection, and Due Process.

118. If the law was equally applied Colletti would be responsible for Plaintiff if Plaintiff was responsible for Coletti. By imposing this huge sanction, the Court is making Plaintiff a guarantor of information with punishment for even innocent mistakes and that is not the law. There was no intentional lie and the mistake was Colletti's. Judge A. Jay Cristol is violating Equal protection and Due Process by only making Plaintiff responsible and sanctioning him for Thirty Thousand Dollars ($30,000.00) which is wrong and Unconstitutional.

38

1

2

3    119. WHEREFORE, Plaintiffs pray that the Court:

4        1.   GRANT Judgment against all of the Defendant's for Fraud;,

5
         2.   Grant Judgment against Judge A. Jay Cristol for Violation of the United States
6

7    Constitution's Equal Protection and Due Process Clause.

8        3.   Enter an order denying the sanctions Granted by Judge A. Jay Cristol in an Official
              Capacity.
9

10   Dated:  October 29, 2018:

11

12                                          By:/s/Thomas Neusom
                                            Attorney For Plaintiffs
13                                          Bar No. 003717
                                            (954)200-3536
14                                          4737 N. Ocean Drive, #129
                                            Fort Lauderdale, FL 33308
15                                          Email: tgnoffice35@gmail.com

16

17

18

19

20

21

22

23

24

25

26

27
                                        39
28

BRIAN HOLLAND AND ANDREA
HOLLAND a/k/a/ BRIAN HOLLAND
5561 RENT ACCOUNT,

              FOR

       Plaintiff,

vs.

APLUS LAMINATION & FINISHING
INC., a Florida Corporation and all
other occupants,

       Defendants.

_____/

IN THE COUNTY COURT IN AND

MIAMI-DADE COUNTY

CIVIL DIVISION

18-8187 CC 05

CASE    NO:

### ORDER DIRECTING DEPOSIT OF RENT INTO REGISTRY OF COURT

**THIS CAUSE CAME ON TO BE HEARD** before me, on May 3, 2018, upon Plaintiff's Motion for Order Directing Deposit of Rent Into Registry of Court, and, having appeared counsel for Plaintiff and Defendant and the respective parties, after having heard argument from counsel, having reviewed the Court file and being otherwise fully advised in the premises, it is:

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Order Directing Deposit of Rent Into Registry of Court be and the same is hereby granted.

2. The Defendant, APLUS LAMINATION & FINISHING, INC., is hereby ordered to deposit the sum of $9,000.00 into the Miami-Dade County Registry of Court on or before May 7, 2018.

3. The Defendant, APLUS LAMINATION & FINISHING, INC., is hereby ordered to deposit the sum of $9,000.00 into the Miami-Dade County Registry of Court on or before May 14, 2018.

3. The Defendant shall further timely deposit the rent as it becomes due into the Registry of Court.

4. The Defendant's failure to timely pay the ordered sums into the Registry of Court shall constitute and absolute waiver of its defenses, other than payment or proof of payment, and Plaintiff shall be entitled to a Default/Default Final judgment for Removal of Tenant and a Writ of Possession to issue forthwith without the necessity of further hearing pursuant to Section 83.232, Florida Statutes.

5. Upon Defendant making timely deposit into the Registry of Court of the sums due on May 7, 2018 and May 14, 2018, the parties shall appear for mediation on May 15, 2018 at 1:30 PM.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 05/10/18.

_____

ALEXANDER S. BOKOR
COUNTY COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter. The movant shall

IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.

Conformed copies to:

JOSEPH R. COLLETTI, P.A.
Attorney for Plaintiff

ALEXANDER E. BORELL, ESQ.
Attorney for Defendant

IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION
CASE NO: 18-8187-cc 05

BRIAN HOLLAND AND ANDREA
HOLLAND a/k/a BRIAN HOLLAND
5561 RENT ACCOUNT

     Plaintiff,

vs.

APLUS LAMINATION & FINISHING, INC.
and all other occupants,

     Defendants.
_____/

### DEFAULT FINAL JUDGMENT FOR REMOVAL OF TENANT

**THIS CAUSE CAME ON TO BE HEARD** before me upon Plaintiff's Complaint for Removal of Tenant,

it is:

**ORDERED AND ADJUDGED:**

1. That a Default Final Judgment be and the same is hereby entered in favor of Plaintiff, BRIAN

HOLLAND AND ANDREA HOLLAND a/k/a BRIAN HOLLAND 5561 RENT ACCOUNT, and against the

Defendant, APLUS LAMINATION & FINISHING, INC., a Florida Corporation, for possession of the premises

located at 5559 NW 36th Avenue, Miami, Miami-Dade County, Florida 33142, for which let Writ of Possession

issue forthwith.

2. ~~That Plaintiff recover from said Defendant costs herein taxed in the sum of $_____ for which let~~

~~execution issue forthwith.~~  Court reserves as to costs.

**DONE AND ORDERED** at Miami, Miami-Dade County, Florida this _____ day of July, 2018. SIGNED AND DATED

JUL 3 0 2018

_____
County Court Judge

JUDGE ALEXANDER S. BOKOR

Copies furnished to:

JOSEPH R. COLLETTI, P.A.
Attorney for Plaintiff
4770 Biscayne Boulevard, Suite 1400
Miami, Florida 3313

ALEXANDER E. BORELL,
Attorney for Defendant
324 Datura Street
Suite 209
West Palm Beach, FL 33401

United States Bankruptcy Court
Southern District of Florida

In re:                                                          Case No. 18-15825-AJC
Nubia Marcella Perez                                            Chapter 11
        Debtor

## CERTIFICATE OF NOTICE

District/off: 113C-1          User: snipesj          Page 1 of 1          Date Rcvd: Oct 05, 2018
                             Form ID: pdf004          Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Oct 07, 2018.
db             +Nubia Marcella Perez,   5559 NW 36 Ave,   Miami, FL 33142-2709
               +Florida Bar,   651 E Jefferson St,   Tallahassee, FL 32399-2300
               +Honorable Alexander Bokor,   County Court Judge,   73 West Flagler St,   Miami, FL 33130-1731
Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                              TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                              TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 07, 2018                    Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING


The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on October 5, 2018 at the address(es) listed below:
              Howard S Toland    on behalf of Creditor   Valley National Bank htoland@mitrani.com
              Howard S Toland    on behalf of Creditor   Newtek Small Business Finance Inc htoland@mitrani.com
              Johanna Armengol    on behalf of U.S. Trustee    Office of the US Trustee
               Johanna.Armengol@usdoj.gov,  johanna.armengol@usdoj.gov
              Nathalie C. Rodriguez    on behalf of Creditor   Nationstar Mortgage LLC nrodriguez@rasflaw.com
              Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
              Peter D. Russin, Esq   on behalf of Creditor Andrea  Holland prussin@melandrussin.com,
               ltannenbaum@melandrussin.com;mrbnefs@yahoo.com;prussin@ecf.courtdrive.com;ltannenbaum@ecf.courtdr
               ive.com;phornia@ecf.courtdrive.com
              Peter D. Russin, Esq   on behalf of Creditor Brian  Holland prussin@melandrussin.com,
               ltannenbaum@melandrussin.com;mrbnefs@yahoo.com;prussin@ecf.courtdrive.com;ltannenbaum@ecf.courtdr
               ive.com;phornia@ecf.courtdrive.com
              Thomas G Neusom    on behalf of Debtor Nubia Marcella Perez tgnoffice35@gmail.com
              Utibe I Ikpe    on behalf of Creditor Brian  Holland uikpe@melandrussin.com,
               ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
              Utibe I Ikpe    on behalf of Creditor Andrea  Holland uikpe@melandrussin.com,
               ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
                                                                              TOTAL: 10



**ORDERED in the Southern District of Florida on October 4, 2018.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No.: 18-15825-AJC

NUBIA MARCELLA PEREZ,                 Chapter 11

                    Debtors.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON BRIAN AND
ANDREA HOLLAND'S MOTION FOR SANCTIONS UNDER
BANKRUPTCY RULE 9011 AND 11 U.S.C. § 105**

   **THIS MATTER** came before the Court for an evidentiary hearing on September 28, 2018

upon Creditors, Brian Holland and Andrea Holland's ("***Landlord***") Motion for Sanctions under

Bankruptcy Rule 9011 and 11 U.S.C. § 105 [ECF No. 25].

**INTRODUCTION**

   On May 30, 2018,  Landlord filed a Motion for Sanctions under Bankruptcy Rule 9011 and

11 U.S.C. § 105 against Debtor Nubia Marcella Perez ("***Debtor***") and her counsel, Thomas

1

Neusom ("***Neusom***")[1] alleging that Debtor and Neusom filed a bankruptcy petition in bad faith for the sole purpose of staying a state court eviction action brought by Landlord against A Plus Lamination and Finishing, Inc. At trial, the Landlord presented no evidence regarding actions taken by the Debtor, but it did present evidence that Debtor's attorney, Neusom, falsely advised Landlord's manager and Landlord's state court attorney that he had filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc., the defendant in the Florida county court eviction action. The Court, having considered the documentary evidence, witness testimony, and counsel's arguments, enters its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1.      Debtor is an individual, and a principal and (apparently) the sole owner of A Plus Lamination and Finishing, Inc. Ex. 19.[2]

2.      A Plus Lamination and Finishing, Inc. is an active Florida Corporation, which entered a one-year commercial lease ("***Lease***") with Landlord to rent property located at 5559 NW 36th Avenue Miami, Florida 33142 ("***Property***"). Ex. 21.

3.      The Lease's one-year term ran from August 1, 2017 to July 31, 2018. A Plus Lamination and Finishing, Inc. agreed to pay $8,666.67 in monthly rent plus sales tax and fees to lease the Property. *Id.*

4.      A Plus Lamination and Finishing, Inc. defaulted on the Lease by failing to make the March 1, 2018 rent payment and subsequent payments. Ex. 1.

---

[1]      Neusom's Florida Bar number is 37148.

[2]      All referenced exhibits were admitted into evidence during the evidentiary hearing.

5. On April 13, 2018, Landlord initiated an eviction action against A Plus Lamination and Finishing, Inc. in the County Court in and for Miami-Dade County, Case No. 2018-008187-CC-05 ("*Eviction Action*").

6. On May 10, 2018, Judge Alexander Bokor ordered A Plus Lamination and Finishing, Inc. to deposit rent into the court registry ("*Deposit Order*"). Ex. 6.

7. The Deposit Order required A Plus Lamination and Finishing, Inc. (1) to deposit $9,000 by May 7, 2018; (2) to deposit $9,000 by May 14, 2018; and (3) to make timely deposits as additional rent became due. Under the Deposit Order, A Plus Lamination and Finishing, Inc.'s failure to make timely deposits would constitute "an absolute waiver of its defenses, other than payment or proof of payment, and [Landlord] shall be entitled to a Default/Default Final Judgment for Removal of A Plus Lamination and Finishing, Inc. and Writ of Possession to issue forthwith without the necessity of further hearing pursuant to Section 83.232, Florida Statutes."

8. Landlord and A Plus Lamination and Finishing, Inc. were also ordered to attend mediation on May 15, 2018 at 1:30 pm. *Id.*

9. A Plus Lamination and Finishing, Inc. failed to deposit into the court registry the $9,000 due on May 14, 2018, resulting in a waiver of defenses and entitling Landlord to immediate default final judgment and a writ of possession.

10. Neusom filed an Individual Chapter 11 bankruptcy petition ("*Petition*") with this Court on behalf of Nubia Perez on May 15, 2018, the day after A Plus Lamination and Finishing, Inc. failed to make the deposit required by the state court Deposit Order. D.E. 1. Neusom executed the Petition on page eleven as counsel for Nubia Perez. *Id.*

11. On page 2 of the Petition, Neusom alleged that Nubia Perez is a small business debtor that does business under the name "A Plus Lamination and Finishing, Inc." This is false.

3

A Plus Lamination and Finishing, Inc., the tenant in the eviction action, is a duly registered Florida corporation. It is not a trade name or a "doing business as" name. No evidence was presented that would establish A Plus Lamination and Finishing, Inc. is registered as a fictitious name for Nubia Perez.[3]

12. Despite the fact that A Plus Lamination and Finishing, Inc. was not in bankruptcy, and just hours before the mediation was scheduled to proceed on May 15, 2018, Neusom called Desiree Lindsay ("*Lindsay*"), Landlord's employee, and Joseph Colletti ("*Colletti*"), Landlord's Eviction Action counsel and advised them both that he filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc.

13. Neusom left a voice message for Lindsay advising her that he filed the Petition for A Plus Lamination and Finishing, Inc. Neusom also had two phone conversations with Colletti on May 15, 2018 where Neusom advised Colletti of A Plus Lamination and Finishing, Inc.'s bankruptcy filing, and Neusom's intent to file a suggestion of bankruptcy in the Eviction Action. He also asked Colletti for the Eviction Action case number on the second phone call.

14. Colletti having been orally advised by Attorney Neusom that A Plus Lamination and Finishing, Inc. filed a bankruptcy petition, he immediately filed a Notice of Cancellation of Mediation, stating, "Defendant has filed a petition for relief with the bankruptcy court." Ex. 8

15. Colletti's testimony was forthcoming, straight-forward, and credible. Colletti took contemporaneous handwritten notes during his conversations with Neusom. Ex. 25.

---

[3]    Neusom filed additional pleadings in this case where he styled the bankruptcy case with Debtor's name as "Nubia Marcella Perez DBA A Plus Lamination." This Court believes that Neusom intended to give the impression that A Plus Lamination and Finishing, Inc. was in bankruptcy. *See* D.E.s 19, 38, 39 and 50.

16.    On May 15, 2018, the state court entered an Order of Bankruptcy Stay and Closing Case. *See* Ex. 7.

17.    During the June 20, 2018, 341 meeting of creditors, Neusom and the Debtor admitted that her bankruptcy petition was filed to stop the Eviction Action, an indicia of bad faith under *Phoenix Piccadilly* standards, *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988):

```
  4                    MR. NEUSOM:  Yeah.  Well, I guess the --
  5        really what happened was there was an eviction, and they
  6        were in the process of almost having a writ of possession,
  7        and so they did have to file.  There was also a
  8        garnishment of some funds.
  9                    So, there was, there was an emergency
 10        situation that participated the filing and required the
 11        filing, and at this point we may be able to resolve these
 12        issues outside of bankruptcy.  So we're going to probably
 13        resolve -- dismiss the bankruptcy.
```

Ex.18.

```
  6           Q.    Okay.  Ms. Perez, the question was, what was
  7        the reason that you -- I understand that your company is
  8        not doing well.  Why did you file for bankruptcy?
  9                    MR. NEUSOM:  Mention the eviction.
 10                    MS. ARMENGOL:  What was that?
 11                    MR. NEUSOM:  Can I talk to her?
 12                    MS. ARMENGOL:  Okay.
 13                    MR. NEUSOM:  You probably may want to talk
 14        about the eviction and the garnishment.  I think those
 15        were, like, what happened.
```

5

Ex. 18 at 10:6-15.

18.     On June 28, 2018, this Court dismissed this case with prejudice, granting (1) Landlord's Motion to Dismiss the Chapter 11 Bankruptcy Petition for Bad Faith and Fraud on the Court and for Relief from the Automatic Stay [D.E. 24], (2) United States Trustee's Motion to Dismiss or Convert the Case [D.E. 46], and Debtor's Motion to Dismiss Bankruptcy [D.E. 49]. D.E. 52.

19.     On July 2, 2018, with no erroneously alleged automatic stay in place, Landlord filed a Motion for Entry of Default Final Judgment in the Eviction Action, and the state court issued a Writ of Possession on July 31, 2018. Exs. 11 and 17.

20.     Although Landlord obtained a writ of possession on July 31, 2018, A Plus Lamination and Finishing, Inc. did not vacate the premises until August 22, 2018.

21.     Lindsay testified that Landlord had a tenant who wished to rent the Property on August 1, 2018, but because A Plus Lamination and Finishing, Inc. was still in the Property, the new tenant could not take possession. Landlord was forced to postpone the lease with the new tenant by one month, with the new lease commencing September 1, 2018. Ex. 24.  Consequently, Landlord lost one month of rent under the new lease at $9,256.00.

22.     As a result of Debtor and Neusom's filing of the Petition and Neusom's fraudulent representations of an alleged stay of the Eviction Action, Landlord hired the law firm of Meland Russin and Budwick, P.A. ("**MRB**") to represent it in the bankruptcy case and MRB has incurred $40,768.33 in legal fees. Ex. 22.

23.     MRB's fees include, among other things, time for attending a 341 meeting of creditors; researching and drafting a Motion to Dismiss the Bankruptcy Petition for Bad Faith and Fraud on the Court; researching and drafting a Motion for Sanctions against Debtor and Neusom;

6

preparing for and attending a hearing on the Motion to Dismiss; preparing for and attending multiple hearings related to the Motion for Sanctions, which was continued twice at the request of Attorney Neusom; witness and exhibit preparation; numerous communications with Neusom, including settlement discussions and the preparation of an unexecuted settlement agreement. MRB also attended the three and one half hour evidentiary hearing on the Motion for Sanctions on Friday, September 28, 2018.

24.     Colletti testified that he, too, filed additional motions and attended additional hearings in the Eviction Action that would not have been necessary had Neusom not misrepresented a bankruptcy stay was in effect. Colletti advised the state court of the dismissal of this case and resumed the Eviction Action. Ex. 14. Landlord paid Colletti an additional $2,000 in attorney's fees to complete the eviction and obtain the writ of possession, which had been delayed by Neusom's false statements.

25.     Neusom argued that Colletti should have independently researched whether the Petition was properly filed in the name of A Plus Lamination and Finishing, Inc., rather than rely on Neusom's representations that A Plus Lamination and Finishing, Inc. filed bankruptcy.

26.     Landlord presented the testimony of two credible witnesses, both of whom testified that Neusom told them he filed a bankruptcy petition on behalf of A Plus Lamination and Finishing, Inc.

27.     Respondent rested without testifying or presenting any witnesses.

## CONCLUSIONS OF LAW

Landlord seeks sanctions against Debtor and Neusom under Bankruptcy Rule 9011 and 11 U.S.C. § 105. Bankruptcy Rule 9011 states:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed **after an inquiry reasonable under the circumstances**,

(1)     it is not being presented for any **improper purpose**, such as to harass or to **cause unnecessary delay** or **needless increase in the cost of litigation**;

(emphasis added).  A sanction under this rule should deter repetition of misconduct. Sanctions may include non-monetary directives, as well as reimbursement of attorney's fees and other expenses.

The Court finds Neusom's argument, that Colletti had a duty to investigate the validity of Neusom's lie about A Plus Lamination and Finishing, Inc. filing for bankruptcy relief, to be misguided, disingenuous, and at odds with the unambiguous language of Rule 9011.  Under Rule 9011, Neusom has the responsibility to sign and file a petition after reasonable inquiry and not for an improper purpose or to cause unnecessary delay.  By filing the Petition, Neusom certified that he conducted a reasonable inquiry, and the Petition was not being brought for an improper purpose or to cause unnecessary delay. The Court and other members of the Bar should be able to rely on the representations of other licensed attorneys.

"The purpose of the automatic stay is to give the debtor breathing room. The automatic stay is not to be used as an abusive litigation tactic." *In re Smith*, 257 B.R. 344, 351 (Bankr. N.D. Ala. 2001) ("The petition is excluded from the safe harbor provision of Rule 9011 because its filing has immediate serious consequences.").  In this case, however, the Debtor and Neusom used the Petition as an abusive litigation tactic. As the testimony at the 341 meeting reveals, and the testimonial and documentary evidence from trial indicates, Neusom filed the individual Petition on behalf of the Debtor, and included A Plus Lamination and Finishing, Inc. for the improper purpose of misleading the state court eviction counsel and the state court judge into staying the

Eviction Action. Neusom misrepresented Debtor's identity in her Petition by alleging that Nubia Perez was doing business as A Plus Lamination and Finishing, Inc., when A Plus Lamination and Finishing, Inc. is actually a registered Florida corporation.

Neusom's misrepresentation to Colletti [that A Plus Lamination and Finishing, Inc. was in bankruptcy when it was not] resulted in the cancellation of the May 15, 2018 mediation, and generated the entry of an Order implementing a non-existent automatic stay and withholding issuance of a writ of possession to which Landlord was entitled as of May 15, 2018.  The timing of the filing of the Petition and the admissions at the 341 meeting indicate that Neusom filed the Nubia Perez Petition for the improper purpose of delaying the Eviction Action, which unnecessarily increased the cost of litigation. However, the evidence is not clear that Nubia Perez understood what Neusom was doing, and there was no evidence that Nubia Perez told any lie that contributed to the Landlord's counsel or the state court judge being misled.  While Neusom knew or should have known that filing the Petition as a delay tactic was improper, the same cannot be said for the Debtor.

The Court has the inherent power to sanction bad faith conduct under 11 U.S.C. § 105. *In re IAMEC Funding, Inc.*, 236 B.R. 490, 491 (Bankr. M.D. Fla. 1999). The bad-faith filing of a bankruptcy petition is sanctionable under 11 U.S.C. § 105. *In re Hidalgo*, 96 B.R. 389, 390 (Bankr. S.D. Fla. 1988).  Even more serious is lying to opposing counsel in an effort to mislead him, and ultimately the Court.  Neusom's lies caused the Landlord to incur legal fees in the alleged amount of $40,768.33 to MRB and $2,000 to Colletti.  Landlord also lost $9,256.00 in rent for the month A Plus Lamination and Finishing, Inc. held over possession of the Property. In total, Landlord claims it lost $52,024.33 because of Neusom's misconduct.  The Court finds that not all the requested fees are compensable.

9

Based on the record and evidence admitted at the evidentiary hearing, the Court concludes that Attorney Thomas Neusom (Florida Bar number 37148) engaged in sanctionable, bad-faith conduct by (1) filing the Individual Chapter 11 Petition for the purpose of stopping the Eviction Action against a registered Florida corporation; and (2) misrepresenting Debtor's identity in the Petition to cause confusion. Neusom wrongfully obtained the benefit of the automatic stay for a non-debtor by misrepresenting to Lindsay and Colletti that A Plus Lamination and Finishing, Inc. was in bankruptcy, thereby obtaining the cancellation of the May 15, 2018 mediation and postponement of the issuance of the writ of possession.

Ironically, if Neusom had filed a bankruptcy petition on behalf of the corporation, he would have obtained a stay without having to lie. If Neusom filed a petition on behalf of A Plus Lamination and Finishing, Inc., the information he provided to Lindsay and Colletti would have been true and he would have achieved the same results that were produced in this case by lies. The Court is reminded of the old U.S. Marine Corp adage, "never attribute to malice that which can be explained by stupidity." It is therefore

**ORDERED AND ADJUDGED** that Landlord's Motion for Sanctions under Bankruptcy Rule 9011 and 11 U.S.C. § 105 is **GRANTED IN PART** as follows:

1. Neusom is liable to Landlord in the total amount of $31,256, representing $2,000 in legal fees to Colletti; $20,000 to MRB for legal fees and $9,256.00 for lost rent. If not paid within thirty (30) days, Landlord may request the entry of a final judgment for the sanctions awarded herein.

2. Neusom is ENJOINED from practicing bankruptcy in any bankruptcy court in the United States for a period of one (1) year from entry of this Order, after which Neusom may apply for readmission to bankruptcy practice upon compliance with all the Local

10

Rules of the Court governing admission to practice and completing a total of eighteen (18) hours of Continuing Legal Education, consisting of twelve (12) hours of Continuing Legal Education in bankruptcy law and six (6) hours of ethics.

3. The Clerk of Court is directed to forward certified copies of this Order to The Florida Bar at 651 E. Jefferson Street, Tallahassee, Florida, 32399 and to the Honorable Alexander Bokor, County Court Judge, at Dade County Courthouse. 73 West Flagler Street, Miami, FL 33130

# # #

**Copies furnished by Clerk of Court to:**

**Debtor**
**Thomas Neusom, Esq.**
**Utibe Ikpe, Esq.**

Utibe I. Ikpe, Esquire is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

11

IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION
CASE NO: 18 - 8187 - cc 05

BRIAN HOLLAND AND ANDREA
HOLLAND a/k/a BRIAN HOLLAND
5561 RENT ACCOUNT

     Plaintiff,

vs.

APLUS LAMINATION & FINISHING, INC.
and all other occupants,

     Defendants.

_____/

## DEFAULT FINAL JUDGMENT FOR REMOVAL OF TENANT

     **THIS CAUSE CAME ON TO BE HEARD** before me upon Plaintiff's Complaint for Removal of Tenant,

it is:

     **ORDERED AND ADJUDGED:**

     1. That a Default Final Judgment be and the same is hereby entered in favor of Plaintiff, BRIAN

HOLLAND AND ANDREA HOLLAND a/k/a BRIAN HOLLAND 5561 RENT ACCOUNT, and against the

Defendant, APLUS LAMINATION & FINISHING, INC., a Florida Corporation, for possession of the premises

located at 5559 NW 36th Avenue, Miami, Miami-Dade County, Florida 33142, for which let Writ of Possession

issue forthwith.

     2. ~~That Plaintiff recover from said Defendant costs herein taxed in the sum of $_____ for which let~~

~~execution issue forthwith.~~ Court reserves as to costs.

     **DONE AND ORDERED** at Miami, Miami-Dade County, Florida this _____ day of July, 2018. SIGNED AND DATED

_____
County Court Judge

JUL 3 0 2018

JUDGE ALEXANDER S. BOKO.

Copies furnished to:

JOSEPH R. COLLETTI, P.A.
Attorney for Plaintiff
4770 Biscayne Boulevard, Suite 1400
Miami, Florida 3313

ALEXANDER E. BORELL,
Attorney for Defendant
324 Datura Street
Suite 209
West Palm Beach, FL 33401



**ORDERED in the Southern District of Florida on October 31, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:                                              Case No. 18-15825-BKC-AJC

NUBIA PEREZ,

    Debtors.

_____/

### ORDER DENYING MOTION FOR STAY PENDING APPEAL

    **THIS MATTER** came before the Court upon *Attorney Thomas Neusom's Request for Stay*

*During Pendency of the Appeal* (ECF 112).  The motion does not set forth the requisite grounds

entitling movant to a stay. The movant has not demonstrated a likelihood of success on appeal.  The

Court is not persuaded that movant will suffer irreparable damage if a stay is not issued, while the

opposing party will suffer no harm if the stay is issued.  Lastly, the Court believes there is no public

interest implicated by the granting or denial of a stay in this case.  Accordingly, it is

    **ORDERED AND ADJUDGED** that *Attorney Thomas Neusom's Request for Stay During*

Exhibit D

*Pendency of the Appeal* (ECF 112) is DENIED.

###

Copies furnished to:

Thomas Neusom, Esq.
Peter Russin, Esq.

FLIP 181113PM0341USBCSDF-MI

1
2   IN THE BANKRUTCY APPELLATE COURT OF THE SOUTHERN DISTRICT OF
3                                  FLORIDA

4
5   DEBTOR
6   NUJBIA MAR ELLA PEREZ.                    APPELLATE CASE NO.
7                                             18-CV-24463-FAM
8                                             Bankruptcy Court
9                                             CASE NO: 18-15825

10
11                                            ATTORNEY THOMAS NEUSOM'S
                                              EMERGENCY MOTION FOR STAY
12                                            DURING PENDENCY OF THE APPEAL
                                              TO THE BAN KRUPTCY APPELLATE
13                                            PANEL
14
15
16                                            HEARING:
                                              DATE
17                                            TIME
                                              PLACE
18  ─────────────────────────────────────
19  MOTION FOR STAY DURING PENDENCY OF THE APPEAL TO THE
20  BANKRUPTCY APPELLATE PANEL

21
22      1. COMES NOW, Attorney Thomas Neuom requesting that the Bankruptcy Appellate
23  Panel Cristol grant a stay of any further proceedings in the Bankruptcy Court in Case No. 18-
24  15825 during the pendency of the Appeal with Case No. 18-CV-24463-FAM.
25
26
27                                      1
28

Exhibit E

2. The relevant part of Bankruptcy Rule of 8007 states:

3.

# Rule 8007. Stay Pending Appeal; Bonds; Suspension of Proceedings

(a) Initial Motion in the Bankruptcy Court.

   (1) *In General*. Ordinarily, a party must move first in the bankruptcy court for the following relief:

     (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;

     (B) the approval of a supersedeas bond;

     (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or

     (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

   (2) *Time to File*. The motion may be made either before or after the notice of appeal is filed.

(b) Motion in the District Court, the BAP, or the Court of Appeals on Direct Appeal.

   (1) *Request for Relief*. A motion for the relief specified in subdivision (a)(1)—or to vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.

   (2) *Showing or Statement Required*. The motion must:

     (A) show that moving first in the bankruptcy court would be impracticable; or

     (B) if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.

   (3) *Additional Content*. The motion must also include:

     (A) the reasons for granting the relief requested and the facts relied upon;

2

1    (B) affidavits or other sworn statements supporting facts subject to dispute; and

2    (C) relevant parts of the record.

3

4    (4) *Serving Notice*. The movant must give reasonable notice of the motion to all parties.

5

6    (e) Continuation of Proceedings in the Bankruptcy Court. Despite Rule 7062 and subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may:

7

8    (1) suspend or order the continuation of other proceedings in the case; or

9    (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest.

10   (Added Apr. 25, 2014, eff. Dec. 1, 2014.)

11   **PRIOR RULE**

12   A prior Rule 8007, Apr. 25, 1983, eff. Aug. 1, 1983, as amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991, related to completion and transmission of the record and docketing of the appeal, prior to revision of Part VIII, Apr. 25, 2014, eff. Dec. 1, 2014.

13

14

15

16   4. Appellant Thomas Neusom is or was a Bankruptcy Attorney able to file in the Southern

17   District of Florida, and he has an application pending to file Bankruptcies in the Middle District

18   of Florida.

19

20   5. The subject of this Appeal is in regards to the personal Bankruptcy of Nubia Marcella Perez.

21   Some issues came up during the Bankruptcy where an eviction attorney named Joseph Colletti

22   misunderstood the situation and may have mistakenly put in a stay in an eviction of a business

23   owned by Perez called A Plus Lamination. It was all Colletti's mistake because he had a copy of

24   the lease between the Landlord Holland and A Plus Lamination.

25

26   Colletti acted without the requisite knowledge and experience and did not consult with his own

27   Bankruptcy Counsel before he ac ted in violation of the Rules of Professional Responsibility.

28

3

6. Neusom filed the Perez Bankruptcy and was obtaining more information about the case when he may have spoken to Colletti about it in order to obtain case documentation such as the Lease which Perez and her company were unable to give him. The eviction Attorney for A Plus was Alex Borell .

7. Based on the facts of the case Neusom believes he will be successful in reversing the Findings of Fact and Conclusions of Law entered by Judge A. Jay Cristol on November 4, 2018 which is currently being appealed.

8. The findings have had the effect of closing down The Law Office of Thomas G. Neusom's Bankruptcy Practice while he has a current Chapter 11 Bankruptcy case pending in West Palm Beach Florida for the BBlack Corporation. The Chapter 11 Bankruptcy Petition was filed on October 1, 2018 with Case No. 18-23654.

9. The Law Office of Thomas G. Neusom is also in the process of filing a Chapter 7 Bankruptcy case in the Middle District of Florida. Neusom has obtained membership in the Middle District of Florida and has almost completed the bankruptcy training.

10. Neusom and his clients BBlack Corporation and Early Hope Transport Inc will suffer irreparable harm and imminent injury if a stay and ultimate vacating of the Findings Of Fact And Conclusions Of Law is not granted.

4

11. Schedules in the BBlack Bankruptcy Case are due on November 8, 2018 and due to the fact that the filing entity is a corporation the Officers can not represent it. I have informed the Officers of the Corporation about the Cristol order which went into effect of November 6, 2018 and I have advised them to obtain other Bankruptcy Counsel, but they were informed about Neusom's issues with Cristol before the filing and they could not find a Bankrutpcy Attorney for their Chapter 11 before or after the filing of their Petition.

12. It is critical that a stay of Judge Cristols Findings and Final Judgment be put in place or the Offices BBlack Corporation and Early Hope Iransport Inc clients in Saint Petersburg will be hurt with the West Palm Beach clients likely facing dismissal of their case.

5

1

2

13. In Order to confirm what is stated by Appellant in this Motion for Stay, portions of one of the
3   Orders in the BBlack Corporation Bankruptcy case follow:

4

5                                        **U.S. Bankruptcy Court**

6                                     **Southern District of Florida**

7
    Notice of Electronic Filing
8

9   The following transaction was received from Adam, Lorraine entered on 11/1/2018 at 8:54 AM EDT and
    filed on 11/1/2018

10  **Case Name:**        B Black Corp

11  **Case Number:**      18-23654-MAM

    **Document Number:** 2
12

13  **Docket Text:**
    Notice of Incomplete Filings Due. [Deficiency Must be Cured by 11/8/2018]. List of Twenty Largest
14  Unsecured Creditors Due: 11/8/2018.Corporate Ownership Statement due 11/8/2018.Chapter 11 Small
    Business Documents due by 11/8/2018. List of Equity Security Holders due 11/14/2018. Summary of
15  Your Assets and Liabilities and Certain Statistical Information due 11/14/2018. Schedule A/B due
16  11/14/2018. Schedule D due 11/14/2018. Schedule E/F due 11/14/2018. Schedule G due 11/14/2018.
    Schedule H due 11/14/2018.Statement of Financial Affairs Due 11/14/2018.Declaration Concerning
17  Debtors Schedules Due: 11/14/2018. [Incomplete Filings due by 11/14/2018]. (Adam, Lorraine)

18
    The following document(s) are associated with this transaction:
19

20  14. It is critical that a stay be entered and Thomas Neusom is entitled to a stay of the Findings Of

21  fact And Conclusions Of Law Entered by Judge Cristol on October 4, 2018.

22

23

24

25

26

27

28                                              6

1

2

3    WHEREFORE, Neusom prays that the Bankruptcy Appellate Panel:

4        1.   Stay further proceedings in Case No. 18-15825 during the Pendency of Thomas Neusom's

5             Bankruptcy Appeal with Case No. 18-cv-24463-FAM

6

7

8    .Dated: November 7, 2018:

9

10

11                                              By:/s/Thomas Neusom
                                                Attorney For Debtor
12                                              Bar No. 003717
                                                (954)200-3536
13                                              4737 N. Ocean Drive, #129
                                                Fort Lauderdale, FL 33308
14                                              Email: tgnoffice35@gmail.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   7

1

2

3

4

### CERTIFICATE OF SERVICE

5

6

7

I HEREBY CERTIFY that a true and correct copy of the foregoing **ATTORNEY THOMAS NEUSOM'S EMERGENCY MOTION FOR STAY DURING PENDENCY OF THE APPEAL TO THE BANKRUPTCY APPELLATE PANEL**

8

was furnished by email or mail to the following on November 7, 2018, to the following by email.

9

10

Utibe I. Ikpe
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@meladnrussin.com

11

12

Utibe I. Ikpe, Esquire
Florida Bar Number: 90301
uikpe@melandrussin.com

13

14

MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center

15

200 South Biscayne Boulevard
Miami, Florida 33131

16

Telephone: (305) 358-6363

17

Telecopy: (305) 358-1221

18

*Attorneys for Brian Holland and Andrea Holland*

19

20

21

By:/s/Thomas Neusom
Attorney For Debtor
Bar No. 0037174
Phone; (954)200-3536
4737 N. Ocean Drive, #129
Fort Lauderdale, FL 33308
Email: tgnoffice35@gmail.com

22

23

24

25

26

27

28

8



**ORDERED in the Southern District of Florida on November 21, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In re:

                              CASE NO. 18-15825-BKC-AJC

NUBIA M. PEREZ,

    Debtor.

_____/

### ORDER ON MOTION FOR STAY DURING PENDENCY OF APPEAL TO THE BANKRUPTCY APPELLATE PANEL

**THIS CAUSE** came before the Court upon "Attorney Thomas Neusom's Emergency

Motion for Stay During Pendency of the Appeal to the Bankruptcy Appellate Panel" filed

November 13, 2018 (ECF 117).  The Court has reviewed the motion and concludes that it is not

directed to this Court but rather, it is directed to "the Bankruptcy Appellate Panel".  The motion

is not subject to a ruling by this Court as it does not request any relief from this Court.  Thus, no

action will be taken on the motion.

    IT IS SO ORDERED.

###

Exhibit F

Copies furnished to:

Debtor
Thomas Neusom, Esq.
Peter Russin, Esq.
AUST